## THE PROPRIETORS OF THE KENNEBEC PURCHASE
*v.*
### TIFFANY.

When a grant or deed of conveyance of land contains an express reference to a certain plan, such plan, in legal construction, becomes a part of the deed, and is subject to no other explanations by extraneous evidence than if all the particulars of the description had been actually inserted in the body of the grant or deed.

If a deed of land refer to a monument as then existing, which in fact is not yet erected, and immediately afterwards the parties fairly erect such monument with the *express view of conforming to the deed,* such monument will govern the extent, though not entirely coinciding with the deed.

*Aliter* if such monument be erected for any *other* purpose.

THIS was a *writ of entry,* brought to recover possession of a parcel of land in *Sidney,* described by metes and bounds, whereof the tenant was said to have disseized the demandants.

It appeared from the report of the Judge who presided at the trial, that the tenant admitted that the title to the premises was in the demandants, unless the tract was to be considered as *part of lot No. 72, according to Nathan Winslow's plan,* and in virtue of certain acts done by the demandants.

It further appeared that *Nathan Winslow,* in 1761, was employed by the demandants to survey and lay out three tiers or ranges of lots, in that part of their tract of land which lies in *Sidney,* extending up and down the river *Kennebec,* and westwardly from the river three miles;—that *Winslow* accordingly surveyed the tract, and made a plan of it, on which each lot is represented as *one mile in length and fifty rods in width;*—that he *marked trees on the river* for the corners of all the lots, but *did not actually run any lines,* nor mark any corners, *west* of the

river ;—and that many of the lots on the river, measuring from one to the other of the original corners made by *Winslow*, are in fact fifty four rods in width.

In the year 1768, *Dr. McKecknie* was employed by the de-mandants to survey and lay out for *Ebenezer Bacon* a lot of land in *Sidney*, containing 500 acres, in *the rear* of the third tier or range of lots on *Winslow's* plan, at the distance of three miles from the river ; and was *instructed to keep clear of the lots on Winslow's plan. McKecknie* measured from the river, to ascertain the westerly line of the third tier of lots, and marked trees on the southeast and northeast corners of the lot surveyed for *Bacon*, which are now well known, and are in the rear of the lots *No.* 75, 76, 78 and 79 on *Winslow's* plan, but appear, by recent admeasurement, to be three miles *and seventy two rods* west of the river.

The demandants accepted the survey of *McKecknie*, and ac-cording to that survey granted the tract of 500 acres to *Bacon*, bounding it thus ;—" a tract of land lying on the west side of " *Kennebec* river *at* the rear of the settlers' back lots, containing " 500 acres, butted and bounded as follows, to wit,—beginning " *at the west end of the north line of settler's back lot No.* 75, thence " south-south-west forty poles, thence west-north-west three " hundred and forty poles to a pond, thence northerly on the " east side of said pond so far as to make two hundred and " forty poles at right angles, thence running east-south-east *to* " *the settlers' back lots*, thence southerly, *on the settlers' back line* " two hundred poles, to the first mentioned bounds."

In the year 1774, *John Jones* was employed by the demand-ants to survey and lay out in lots the land in the rear of *Wins-low's* lots, *beginning at the east line of the Bacon-tract, and extending southerly to the south end of Snow's pond ;* and he accordingly laid out the land from the *Bacon-lot*, southerly, to the south end of the pond, fronting the lots on the pond ; and made a plan, representing the *Bacon-lot* as the northern boundary, the pond as the western boundary, and a line drawn from the south east corner of the *Bacon-lot* southerly as the eastern boundary. This plan he *returned to the demandants*, who thereupon *requested him to lay upon his plan the lots on Winslow's plan*, so that they might see the whole territory between the pond and the river,

at *one view*, and he accordingly copied the plan of *Winslow* upon his own.

The demandants afterwards granted the lots adjoining the pond, *by Jones' plan ;* but *Jones* never run nor marked any of the lines represented on his plan, except fronting the lots on the pond, and did not ascertain by actual measure, nor did he know, the western boundary or line of the lots laid down on *Winslow's* plan.

In 1777 the demandants granted the lot No. 72, *according to Winslow's plan*, to *Levi Robinson*, as a settler, under whom the tenant claims.

*Robinson* claimed this lot as extending as far west as the east line of the *Bacon-lot*, but never made any actual improvements within seventy-two rods of it, and never inclosed any part of it *within fences*. In 1789 *Robinson* conveyed one hundred acres of the *west end* of lot No. 72, to the tenant, who has ever claimed to hold as far west as the east line of the *Bacon-tract*, as represented on *Jones'* plan ; but no part of the land demanded was ever inclosed within fences, until within thirty years before the commencement of this action.

The Judge instructed the jury that as the tenant claimed under the plan of *Winslow*, the survey and plan of *Jones* were not to be regarded as evidence in the case ;—that the location of the *Bacon-lot*, being subsequent to *Winslow's* plan, could have no effect to fix the western limit of the third tier or range of lots laid down by *Winslow ;*—and that the tenant could not hold, as part of lot No. 72, any land beyond three miles west of *Kennebec* river ;—and a verdict was returned for the demandants, subject to the opinion of the Court upon the correctness of those instructions.

*Bond*, for the tenant, contended that monuments erected and locations actually made by the parties, after the execution of the deed, were equally binding and conclusive upon the parties, as if expressly mentioned in the deed. A subsequent location of land not described in the deed by visible monuments, is only the completion of what the parties had previously commenced. It is a practical exposition of their own meaning in the deed, by which they both ought to be bound.

Such was the location in 1768, by *Dr. McKecknie*, who was

directed to go *to the end* of the third range of *Winslow's* lots,
but had no authority to go *beyond* it.   Under these instructions
he made a survey and marked corners as the western limits of
the third range of lots on *Winslow's* plan, and which are to be
regarded as the *agreed* bounds, made by the proprietors them-
selves, they having accepted the survey, and expressly adopted
it as correct in their grant to *Bacon.*

   The survey by *Jones* in 1774, may be considered as a con-
firmation of *McKecknie's ;* for he too, at the request of the pro-
prietors, made a plan of his own survey, as *adjacent* to *McKeck-
nie's* and *Winslow's ;* and they have recognized its correctness,
by referring to it in their subsequent grants.

   In support of this position were cited *Jackson v. Ogden,* 4
*Johns.* 140.   7 *Johns.* 238. *S. C.   Jackson v. Murray,* 7 *Johns.* 5.
*Jackson v. McCall,* 10 *Johns.* 377. *Jackson v. Dieffendorf,* 3 *Johns.*
269. *Jackson v. Vedder,* 3 *Johns.* 8. *Makepeace v. Bancroft,* 12
*Mass.* 469. *Pernam v. Wead,* 6 *Mass.* 131. *Howe v. Bass,* 2
*Mass.* 380.

   *R. Williams,* for the plaintiffs.

   As the lot No. 72, in the original grant by the demandants,
was described with express reference to *Winslow's* plan, that
plan must be regarded as part of the deed.   And no survey
having been actually made by *Winslow* of any lines running
back from the river, the distance to which they may be extend-
ed, is to be ascertained by application of the scale to the plan.
All the surveys except *Winslow's* are subsequent transactions,
and cannot, consistently with legal principles, be admitted to
affect a prior deed.   If they could, every grant would be left
in the power of the grantor.   The case from 12 *Mass.* 469,
does not militate with this position ; as it only shews that where
a monument is referred to in a deed, as then actually existing,
when in truth it is not yet erected, and the parties afterwards
erect it by common consent, they are bound by the location
thus made.

   MELLEN C. J. delivered the opinion of the Court as follows :
        The motion for a new trial is grounded upon the rejec-
tion of certain proof offered by the tenant; and the particu-
lars of this proof are stated in the report of the Judge who

presided in the trial.—If this proof was improperly rejected, the verdict must be set aside and a new trial granted; other-wise judgment must be entered for the demandants.

The demanded premises are claimed by the tenant as a part of lot No. 72 and in no other manner; and the question is, how far that lot extends westwardly.—It is admitted that *Winslow*, when he made his plan of the *first, second* and *third* ranges, only measured the *width* of the lots on the *first* range and set up monuments by the river; and then made his plan of the three ranges; each to be one mile wide; or in other words the *lots in each range* were to be *one mile* in length: and that the extent of the lots in all the ranges was then to be ascer-tained by length of line only.

The counsel for the tenant admits that the true *west line* of the *third* range is only *three miles* from *Kennebec River*, unless it has been placed either *expressly* or by *implication farther* west, and so *located* by the Proprietors or their agents, as to give extension to the lots in that range as far westwardly as the *Bacon-lot*, and so far as to include the demanded premises as part of lot No. 72.——This lot was granted to *Robinson, according to Winslow's plan;* and the tenant holds what was granted to *Robinson*, and nothing more.

When land is granted or conveyed *according to a certain plan,* such plan, in legal construction, becomes a *part of the deed*, and is subject to no other explanations by extraneous evidence, than if all the particulars of the description had been actually inserted in the body of the grant or deed. Now it is clear that according to *Winslow's* plan lot No. 72 extends only *three* miles from the river; and if the grant to *Robinson* had been made *before* the *Bacon-lot* was located and *Jones'* survey completed, the lot would not have been extended so as to embrace the land in dispute. We are then to inquire whether the location of the *Bacon-lot* by *McKecknie*, or the survey and plan of the rear lands made by *Jones* do in legal contemplation alter the case.

When *McKecknie* located the *Bacon-lot*, he measured *for himself*, to ascertain the west line of the *third range*, or in other words the *end* of the three miles from the river; and it appears by the plan taken in the present case, that he made seventy-

two rods *large measure :* and therefore, though in the description of the bounds of that lot, it is *said* to adjoin the lots in the *third range,* it is *in fact* seventy two rods to the westward of that range.—This was evidently an error on the part of *Mc-Kecknie :* and the lot was located by mistake seventy two rods farther west than was intended.—It seems that the proprietors were not aware of this error when they employed *Jones* to survey and make a plan of the lands *south* of the *Bacon-lot* and westward of the third range of *Winslow's* lots ; and it is equally clear that *Jones himself* was not conscious of it at the time he executed the duty assigned him. He proceeded on the mistake made by *McKecknie* and when he copied *Winslow's* plan and laid those lots down on his own plan, he *continued* the mistake by representing those lots as extending westward as far as the *Bacon-lot.*—It is not contended that *Jones* knew the *rear* line of the setttlers' lots or in other words the *west* line of the third range : he never run that line or attempted by any correct process to ascertain its true position.

We do not question the correctness of the decisions on which the counsel for the tenant relies.—In the cases cited from *Johnson* the lands had been surveyed and certain monuments erected *before* the deeds were executed ; and the description was variant from the previous survey. The Court there decided that the generality of the language of the deed as to the lot, should be explained and corrected by the actual survey which had been made in contemplation of the conveyance.

In the case of *Makepeace v. Bancroft* the monument referred to in the deed did not exist at the time of the execution, but afterwards the brick wall, being the monument described, was erected, and was intended to conform exactly to the deed, though it did not. Yet the Court decided that this monument must govern the construction. It was intended to govern it.— The language of the Court in that case is this " If a deed of " land pass at a distance from the premises granted and reference " should be made to a stake and stones for the termination of one " of the lines, no such monument actually existing, and the par- " ties should afterwards fairly erect *such* monument with *intent to* " *conform to the deed,* we think the monument so placed would " govern the extent, although not entirely coinciding with the

" line described in the deed."—The case at bar differs from that case in two important particulars :

1. The deed referred to a *certain monument* at the end of the line ; but there is none referred to on *Winslow's* plan at the end of the third mile.

2. In the case of *Makepeace v. Bancroft*, the *monument named* in the deed, was erected with the *express* view of conforming to the deed.—In the case before us the acts done by the agents of the Proprietors, which are relied upon as proof of an *extension westward* of the lots in the third range, and a *location of the west line* of said range, were all performed for *other* purposes, and without any intention to settle the western boundary of the range.

It is admitted, or not denied, that the tenant holds the lot which he purchased, and has his complement of acres. The lot is a mile long, exclusive of the demanded premises ; and as *wide* or *wider* than represented on *Winslow's* plan. No injustice then is done to the tenant.

We do not perceive any principle of law and certainly none of justice, which calls upon us to pronounce that such a *mere mistake* of a surveyor of the Proprietors, of which they had no knowledge until after the lapse of many years, and which has not violated the rights of any who claim under their grants, has had the effect completely to divest those Proprietors of their legal right and title to a valuable tract of land. The location of the *Bacon-lot* was not made with *the intent* to settle the western line of the third range, nor was *Jones'* survey made for that purpose. There is then no *express* location or extension of the lots in the third range as the tenant's counsel contends ; and if such effect is to be considered as produced by *implication*, it is an implication resulting from *ignorance* instead of *knowledge*—from *mistake* instead of *intention*.

It is known to some of the Court that several years since a question similar to the present arose respecting a tract of land in *Vassalborough.*—The facts in the case alluded to were nearly the same as in this ;—a similar error was committed by the surveyor who run out and made a plan of the lands in the rear of the third range, surveyed before by *Winslow.*—Upon accurate admeasurement, it was found that the *fourth* range did not ad-

join the *third*, as was supposed when it was located. The cause was tried before the Supreme Judicial Court of *Massachusetts*, and they were clearly of opinion that the lands situated between the termination of the *third tier of lots* in *Winslow's* plan, or the end of three miles from the river, and the *fourth* range as located by monuments, were the property of the Proprietors—and the decision was conformable to this opinion. It is understood that all concerned have acquiesced in it.

For the reasons we have assigned we are all satisfied that the evidence offered by the tenant was properly rejected and of course that there must be

*Judgment on the verdict.*

See *Lunt v. Holland*, 14 *Mass.* 149.