SHAFTER, J., expressed no opinion.

---

ROBERT H. VANCE *v.* E. ELIZA FORE, WM. A. SUB- LETT, FRANK WILLIAMS, WM. BUTCHER, J. W. HILL, D. V. THOMPSON, R. C. MARSHALL, AND JOHN FORE.

DEED—DESCRIPTION IN.—Where one deed refers to another for a description of the granted premises, the deed referred to becomes a part of the other; and the

description contained in it is regarded as of the same effect as if copied into the deed itself.

DEED—REFERENCE IN TO MAP.—Where a map or plan of a tract of land, with lines drawn upon it marking its boundaries, and with the natural objects upon its surface laid down, is referred to in a deed as containing a description of the premises therein conveyed, this map or plan is to be regarded as giving the true description of the land conveyed, as much as if it was expressly recited and marked down in the deed itself.

DEED—CONFLICTING DESCRIPTIONS.—If a deed contains conflicting descriptions, that description is to be adopted which is the least likely to be affected with mistakes.

SAME.—Where a deed referred to another deed previously made for a description of the premises conveyed, and also to a map previously made for a description of the same premises, and the description in the deed referred to did not fix any monument at the initial point which could be determined with accuracy, and the end of the line running from the initial point terminated at "the base of the mountain," and then turning down at right angles was to follow down the base of the mountain, and the character of the country was such that witnesses might differ as to the location of these lines, and the map referred to represented all the natural and artificial objects found upon the land—such as streams, buildings, and roads— and there was a conflict between the verbal description as found in the deed and the boundaries as laid down on the map; held, that the description presented by the map must be adopted as the one most stable, and least likely to be affected with mistakes.

SAME.—Where a deed contains two descriptions of the land conveyed, and both are of equal authority, that one which is most favorable to the grantee must be adopted.

APPEAL from the District Court, Seventh Judicial District, Solano County.

Pena and Baca were the co-grantees of the Mexican Government of a tract of land confirmed and patented to them by the United States, which grant included the demanded premises.

Baca's deed to McDaniel, referred to in the opinion of the Court, was for a portion of the grant, and was dated August 21st, 1850.

Pena's deed to Currey and Clarke, dated January 27th, 1853, also mentioned in the opinion of the Court, besides referring to the McDaniel deed for a description of the property conveyed, contained an additional reference to a map made by Swan, a surveyor. This map, Swan made after the purchase by McDaniel, at the request of McDaniel and one Mizner. The description contained in the McDaniel deed, literally followed, did not include the demanded premises;

the map made by Swan, however, did include the demanded premises.  The tract of land in controversy was a parallelogram, having for its base an arroyo lying south of the land described in the McDaniel deed, but was included in the Swan map.  On the 7th day of November, 1853, Pena executed to Vance, the plaintiff, a deed, which, both parties admitted, included in its description the demanded premises.  Vance claimed under this deed, and it was insisted by him that the deed to Currey and Clarke did not convey any land except the quantity within the literal calls of the McDaniel deed, while the defendants claimed that the deed to Currey and Clarke conveyed all the land laid down on the Swan map to which it referred.  As both parties claimed under the same grantors, there was no question about title.  Vance purchased with full knowledge of the prior deeds, so that the only issue before the Court was the construction of the description contained in the Currey and Clarke deed.  The defendants, a part of them, claimed under Currey and Clarke, and a part of them set up an outstanding title in Currey and Clarke, or their grantees.

The Court below gave judgment for the defendants, and plaintiff appealed from the judgment, as well as from an order denying a new trial.

The other facts are stated in the opinion of the Court.

*W. W. Stow*, for Appellant.

All the surveyors agree that there was and is no difficulty in locating by the description in the McDaniel deed the lands thereby conveyed and therein described; and hence, if the deed to Clarke and Currey contained no other words of description, there could be no dispute, and no hesitation in determining that Vance did, by the conveyance from plaintiff, acquire *title* to the lands for which he brought ejectment, and which are claimed under the deed to Clarke and Currey.

But because of the following language in the deed to Clarke and Currey : " the same being the land as laid down on a map or plat thereof made by Thos. M. Swan, Esq.,"—it is claimed

that Clarke and Currey acquired title to one thousand nine hundred more acres than McDaniel's deed conveyed.    This argument and pretension rests for its sole foundation upon the proposition that all other *words* of descriptions in the Clarke and Currey deed must be rejected, or must be controlled by reference to the Swan plat or map.

In *Ferris* v. *Coover*, 10 Cal. 628, Mr. Chief Justice Field says: " The principle to be extracted from these cases is this: that the *lines* actually *intended by the parties,* if they can be *ascertained, are to control.*    The rules adopted in the construction of *boundaries* are those which will best enable the Courts to ascertain the intention of the parties.    Thus, preference is given to monuments, because *they are least liable to mistake, and the degree* of importance given to natural or artificial monuments, courses, and distances, is just in proportion to the liability of parties to err in reference to them.    But they do not occupy an inflexible position in regard to each other.    To hold otherwise would be to give greater importance to the rule itself than to the reason of the rule.    It may sometimes happen in case of a clear mistake an inferior means of location will control a higher.    In *Davis* v. *Rainsford*, 17 Mass., it was held that if, on taking the whole description together, it would be more reasonable to suppose a mistake was made in the monuments referred to than in the measurements of the distance, where the two disagree, the measurement should govern instead of the monuments ; and, in that case, a diagram or plat of the land was allowed to control the designation of the monuments. ' To this admeasurement,' says the Court, ' we are bound to adhere, in order to effectuate the intention of the contending parties.' "

" In *Norwood* v. *Byrd*, 1 Richardson, S. C. 135, it was held that when on *the face of a deed* the mention to convey a particular tract of land is *clear*, but the description of metes and bounds is, upon a survey for the purpose of locating the tract, ascertained to be erroneous, the description by metes and bounds will be rejected as surplusage, and the land located so as to cover the land clearly *intended to be conveyed.*"

In *Falwood* v. *Graham*, 1 Richardson, 497, the Court say : " The defendant's counsel is wrong in supposing that there is any difference in the rules of location as laid down and enforced in the older or more recent cases. They all maintain that in locating lands we are to resort, first, to natural boundaries ; second, to artificial marks ; third, to adjacent boundaries ; fourth, to courses and distances ; *but it has never been held that each of these occupied an inflexible position.*"

In this connection we refer to authorities (not cited in *Ferris* v. *Coover*): *Seaman* v. *Hogeboom*, 3 Barbour, S. C. 215 ; 21 Ib. 398 ; *Jackson* v. *Ransom*, 18 John. 107.

" The *construction* ought to be made upon the entire deed, not on any particular part of it." (*Jackson* v. *Blodget*, 16 John. 172.)

We therefore deduce the rule applicable to this case to be, that the intention of the parties is to be ascertained and given ; that if, to ascertain *it*, one part of the description must be rejected or disregarded, it is proper for the Court to treat such portion as surplusage.

That when there are two attempted descriptions, which are certain in themselves, and which agree with each other, and a third which is at total variance with the other two, the third *must* be rejected, especially as in the case where on its face it assumes to agree with the other two, but, in point of fact, it does not.

*John Reynolds*, also for Appellant.

It is very clear that Swan was called to survey the lands included in the McDaniel deed, and for no other object. To every person and party that object only could have been known, and no presumption that the survey should or could include any other lands than those in that deed can be made against Pena, or the plaintiff, or any other person. And knowing that to be the object and extent of the survey, well and properly may Pena, after giving the same description in the Currey and Clarke deed as contained in the McDaniel deed, refer to the Swan map. And knowing that it could not con-

tain more than the lands described in the McDaniel deed, that map cannot control those boundaries which are certain, and which, from all the testimony, do not include the lands in question.

The lands in the Currey and Clarke deed are described as follows:

" Beginning at a point one mile and a half due north of the point where the county road, so called, crosses the water course or branch '*Arroyo de Agua,*' about a mile and a half east of said Manuel Baca's dwelling house, in the County of Solano ; thence running due west to the base of the mountains ; thence in a southerly direction, following the base of the mountains, to a point about three English miles due south of the first mentioned course or line; thence due east three English miles; thence due north three English miles ; then west to the place of beginning."

If the description had stopped here, I think there could have been no doubt but that this description must have been confined to the land contained in the McDaniel deed, and could not have included the lands in question.    All the surveyors, as witnesses, say, unequivocally, that the McDaniel deed does not include the lands in this suit.

The description in the Currey and Clarke deed then proceeds : " The same being the land as laid down on a plat or map thereof made by Thomas M. Swan, Esq."    I have already shown the object of making this map, and its effect upon the parties to this deed and the plaintiff in this action.    But suppose we admit, for the sake of the argument, that it was intended to include all the lands embraced within its most exterior lines, then it could not control the description in this deed, nor extend the boundaries of this deed, so as to include the lands in question.

The description in the Clarke and Currey deed then proceeds : " And being the land the boundaries and courses whereof are described in a certain deed from said Baca to one William McDaniel, bearing date the 1st day of August, 1850."

This, as I have already said, shows clearly that it was the

intention of the parties to convey only the lands included in the McDaniel deed. After giving a full description of the lands, being the same as contained in the McDaniel deed, and referring to the map, with the knowledge that the object of that map was only to include the lands contained in that deed, they then, to make their intention more certain, and that the Currey and Clarke deed should only contain the lands in the McDaniel deed, refer again in a pointed and particular manner to the McDaniel deed, to show that the lands then to be conveyed were to be confined to the lands in the McDaniel deed, and to those only.

*Whitman & Wells*, for Respondents.

While it is true that no rule for the location of land described in a deed can be laid down which is not subject to an infinite variety of exceptions arising out of matters of evidence, still, it is equally true that there are certain general rules, well considered and established, which must be the guide of Courts in considering the proper construction of deeds, and by which the evidence must be measured. We propose to state some of these rules which are so well established that they cannot be disputed, and by these rules and the evidence given in the case as measured by them, to insist that the judgment of the Court below was properly rendered.

1st. Every part is to be taken most strongly against the grantor, and every uncertainty is to be taken in favor of the grantee. (*Hathaway* v. *Power*, 6 Hill, 453—this is a very full case, and we invite the attention of the Court to it, although we imagine that the dispute between counsel for appellant and ourselves is not so much as to what the rules are, as to what is their proper application to the case at bar—*Middleton* v. *Pritchard*, 3 Scam. 510 ; *Cocheco Co.* v. *Whittier*, 10 N. Hamp. 305 ; *Jackson* v. *Shedson*, 3 J. R. 375 ; *Jackson* v. *Gardner*, 8 J. R. 308 ; *Jackson* v. *Blodgett*, 16 J. R. 172.)

2d. A plan of a tract of land which is referred to in a deed for the purpose of description, is to be treated as if it were annexed to and made part of the deed, and may be

referred to for the purpose of aiding in the identification of the land, showing its form, location, etc. (*Lincoln* v. *Cullum*, 4 Ala. 576.) Under this rule it has been decided that when lines are laid down on a map or plan, and are referred to in a deed, the courses, distances, and other particulars appearing on such plan are to be as much regarded as the true description of the land conveyed as they would be if expressly recited in the deed. (*Davis* v. *Ramsford*, 17 Mass. 210.) And also, if a lot of land be granted, specifying its number in a certain patent, and referring to a map on which it is laid down, the whole lot will pass, although described in the deed to contain a less number of acres than it actually does. (*Jackson* v. *Defendorf*, 1 Cal. 493.)

3d. A deed will always be construed, if possible, so as to render it operative, and to carry out the true intention and meaning of the contracting parties, whenever it is possible to ascertain the same. So it was decided in *Keitte* v. *Reynolds*, 3 Green. 393, side paging : that, "When a parcel of land is conveyed, as being the whole of a certain farm, which is afterwards described in the deed by courses and distances which do not include the whole farm, so much of the description will be rejected as that the whole may pass." (See, also, *Lodge's Lessee* v. *Lee*, 6 Cranch. 273.) So in *Jackson* v. *Loomis*, 18 J. R. 81 : " The governing consideration in all cases upon the construction of deeds is to give effect to the intention of the parties, if the words they employ will admit of it ; * * * here is a flat contradiction in the description, and then we ought to take that which is most stable and certain ;" and in *Jameson* v. *Balmer*, 1 Shep. 425 : " Though there may be a want of accuracy, or, indeed, a repugnance in some part of the language of a deed of land, the intention of the parties is to be gathered from the whole language used ;" and in *Stone* v. *Clark*, 1 Met. 378 : " When a deed conveying land is of doubtful construction as to the boundaries, the construction given by the parties themselves, as shown by their acts and admissions, is deemed to be the true one, unless the contrary be clearly shown ;" and in *Proctor* v. *Pool*, 4 Dev. 370 : " If the

description in a deed be so vague and contradictory that it cannot be ascertained what thing is meant, the deed is void— but different descriptions will be reconciled, if possible, or if irreconcilable, yet, if one of them point out the thing intended, a false or mistaken reference to another particular shall not avoid it;" and in the case of *Norwood* v. *Byrd*, 1 Richardson, S. C. 135, cited by opposing counsel, the Court say: "To effect the plain intention to convey the Norwood grant, the boundaries may be rejected as surplusage." (See, also, *Jackson* v. *Loomis*, cited *supra*, and the same case, 19 J. R. 448 ; *Jackson* v. *Blodgett*, 16 J. R. 172 ; *Jackson* v. *Gardner*, 7 J. R. 217.)

By the Court, SHAFTER, J.

This is an action of ejectment. The question presented by the record for review involves the construction of a deed given by Pena to Currey and Clarke, January 27th, 1853, and recorded February 19th of the same year. The description of the land intended to be conveyed is as follows:

" All and singular any of the lands and lots of land embraced within the boundaries of that parcel or tract of land described in a certain deed executed by Manuel Baca to William Mc-Daniel, bearing date on or about the 21st day of August, in the year 1850 ; the said land being in the County of Solano aforesaid, and the boundaries being described on a certain map thereof made by Thomas M. Swan, to which said deed to said McDaniel reference is hereby made for a full and ample description of said land."

The description in the deed of Baca to McDaniel begins at a point near the centre of the north line of the tract to be conveyed, and proceeds as follows: " Thence due west to the base of the mountains ; thence in a southerly direction three English miles, that is to say, following the base of the mountains in a southerly direction three English miles ; thence due east three English miles ; thence due north three English miles ; thence west to the place of beginning, so as to include three English miles square, or nine square miles of land."

The Swan map is made part of the statement on appeal, and under the adjudged cases both that map and the description given in the deed of Baca to McDaniel, are to be considered part of the deed to be construed. "When one deed refers to another for a description of the granted premises, it is regarded as of the same effect as if the latter was copied into the deed itself." (*Allen* v. *Bates*, 6 Pick. 460; *Foss* v. *Crisp*, 20 Pick. 121.) "When lines are laid down upon a plan, and are referred to accordingly in a deed, they are to be regarded as giving the true description of the parcel as much as if expressly recited in the deed itself." (*Davis* v. *Rainsford*, 17 Mass. 210; *Kennebec Purchase* v. *Tiffany*, 1 Me. 219; *Thomas* v. *Patten*, 13 Me. 329; *Lunt* v. *Holland*, 14 Mass. 149; *Miller* v. *Cullum*, 4 Ala. 576.)

The deed to McDaniel calls: First—For nine square miles; Second—Lying in the form of a square; Third—Included within certain boundaries named. The boundaries as given are courses and distances, aided somewhat as to the westerly side of the tract by reference to physical objects. The initial point is not marked by any monument. The end of the line, described as running due west from the place of beginning, is not indicated otherwise than by saying that it terminates "at the base of the mountain." The reference here is not to a visible object, but to a point, the exact location of which can never be determined with absolute precision. Witnesses of equal intelligence, after giving to the subject an equal amount of attention, might, and probably would, differ more or less in their conclusions concerning it. The western line is described as running in a southerly direction three English miles, following the base of the mountain; but the exact line of the base is not fixed by any reference to visible objects, nor is there any object named as marking the southern terminus of the western line. The residue of the description is clearly given by courses and distances, and to every practical intent we consider that the entire description is of like character. A plat was produced in evidence at the trial, based upon this description by courses and distances, and it appears as a fact in the case that

the included area contains nine square miles, the quantity called for by the deed; but it also appears that this result was reached only by a sacrifice of the square form constituting the second call. As between these conflicting requirements in the deed to McDaniel, the description going upon courses and distances must prevail. But the case shows that there is a discrepancy or conflict between the verbal description by courses and distances and the description furnished by the map, and the law governing that conflict is the principal question presented for our consideration.

It appears that the map includes an area larger by nineteen hundred acres than the area embraced in the verbal description by courses and distances, which excess of quantity lies in the form of a parallelogram constituting the southern portion of the map.

The map contains something more than a mere delineation of exterior boundaries. The course and location of the hills on the west side of the tract are given. The general area of the map is subdivided into lots, the positions of which are respectively indicated by interior lines and by numbers, and the quantity of land embraced in the lots respectively is stated in figures on the face of each lot. The site of the Town or Village of Vacaville is produced upon the plan, and the plan is traversed by roads and streams running in various directions. Not only are these natural and artificial objects represented upon the map, but they fill it to its exterior limits. The map further shows the position of the tract relatively to an outside object, viz: the dwelling house of Baca, and exhibits a "county road," running from the house to and across the tract in a northeasterly direction; and the question precisely stated is, whether a map so constructed, it being referred to and made part of the deed to be construed, is to be regarded as a more authoritative manifestation of the understanding of the parties than the verbal description by courses and distances.

The rule governing the construction of deeds containing conflicting descriptions is that the description the least likely to be affected with mistakes is to be adopted. (*Davis* v. *Rains-*

ford, 17 Mass. 210.) By way of further exposition, it has been held that that description should be followed which is the most stable and certain, (*Jackson* v. *Loomis*, 18 John. 81,) and the only reason why monuments are followed as against courses and distances is, that of the two, monumental lines are more stable and certain, and are less liable to be mistaken. We consider that the map constituting a part of the deed now in question, replete as it is to its very outlines with delineations of natural objects found upon the land, such as hills and streams, and of constructions thereon, such as roads, houses, villages, etc., is more " stable and certain," and " less likely to be affected with mistakes," than the other description by courses and distances contained in the deed. In effect, the map makes the deed a conveyance by monuments. Baca's house to the west of the tract is a monument, and so is the chain of hills forming its western boundary, and so is every object, whether natural or artificial, delineated upon the map. These objects might have been set forth in language ; and if they had been, and with that fullness of detail which the map exhibits, that such verbal description would have overruled the description by courses and distances can hardly admit of question. For all the purposes of argument here, the map may be regarded as a daguerreotype of the land which the grantor intended to convey. In *Thomas* v. *Patten*, 13 Maine, 333, it was held that all the objects represented upon a plan are to have the same effect as they would if brought into the deed by verbal description.

But there is another view under which the point in controversy may be disposed of. Assuming that we are mistaken in holding that the description furnished by the map is more reliable and therefore more authoritative than the verbal description by courses and distances, the most that can be claimed for the appellant is that the two descriptions are of equal authority. Considering the case under that aspect, the settled rule of law would require us to adopt the description most favorable to the grantee.

Judgment affirmed.