## DOE EX DEM MILLER v. CULLUM.

1. Where a map is referred to in a grant or deed, as indicating what is intended to be conveyed, it is considered as a part of the conveyance, and may be referred to for the purpose of aiding in the identification of the land, showing its form, location, &c.

2. Whether a monument, or boundary referred to in a conveyance, is identical with that found upon the ground, and which is supposed to answer to it is, when disputed, a question of fact for the jury.

3. It cannot be assumed as a legal conclusion, because a plot accompanying a survey, and which traces its lines, seems to indicate the point of beginning to be at or near the mouth of a branch running into a navigable stream, that, therefore, the mouth of the branch shall ever after be regarded as the starting point in admeasuring the land, or ascertaining its location.

WRIT of Error to the Circuit Court of Mobile.

Doe ex dem Miller v. Cullum.

This was an action of ejectment against the plaintiff in error to recover the possession of a tract of land situate in the city of Mobile, and described in his declaration as follows, viz:— Beginning at a point in the county of Mobile, on the sectional line between section number twenty-seven and thirty-four, and twenty-six and thirty-five, township number four, south, range number one, west, and distant eight chains and thirty-nine links north from the corner post of said section, thence south eighty two degrees east, the distance of thirty-one chains to the mouth of a bayou on Mobile bay, opposite the house called the Pavillion, thence northerly at right angles with said last mentioned line five hundred feet, thence north eighty-two degrees west, to the sectional line running between sections twenty-seven and thirty-four, and twenty-six and thirty-five, thence on said line to the place of beginning.

The cause was tried on the plea of not guilty, and a verdict being found for the defendant, a judgment was rendered accordingly.

On the trial the plaintiff gave in evidence a concession for the land in question, made by the intendant, &c. of Florida, in 1807, with a plot thereto attached, the configuration of which, so far as material is here shown.

He also proved the confirmation of the concession by the United States, and adduced a certificate of survey and patent certificate for the same. *Further*, he " gave in evidence conveyances from the Spanish grantees to himself for land at the south side of said tract, and proved that he was in possession of the land sued for, till about 1835 or 6, when persons under whom the defendant claimed, took possession" of the same.

73

The plaintiff claimed that his southern boundary was a line commencing at the mouth of a branch, at the edge of the bay, as shown by the plot.

The defendant claimed, that the boundary was at a point about three chains or more north-east from the mouth, and introduced proof that there was a pine and laurel at a place corresponding with the point marked B., and that by measuring one hundred and fifty perches from B., at right angles with the north boundary of the tract, it reached the bay at the place contended for by him; and that there were marks on trees to be found at that place, and a line marked on trees running west from that point.

The plaintiff proved that a line running north from the mouth of the branch was marked on the trees, and offered proof that this was the true line of the Spanish and American surveys.

The plaintiff prayed the Court to charge the jury as follows, viz: " That the survey of the land commenced at a point marked A. on the plot, and that the point at the mouth of the branch must govern—that it was not competent to commence at the point B. and measure the distance to the bay to ascertain the starting point, if it indicated a place different from the point A. at the mouth of the branch; that they could not disregard the mouth of the branch as a starting point in the survey, to find where the true line started from; and that the point A. at the mouth of the branch controlled the survey, and could not be departed from." The Court declined to give the charge as requested, and instructed the jury that this was a question of boundary merely, and the title of the plaintiff not being disputed, it was only necessary that the premises sued for should be covered by the patent under which he claimed. The first consideration for them was, to ascertain from the evidence the lines of the plaintiff, as they were run and marked on the ground; if these lines could be ascertained, the land within them was the plaintiffs, and no more, without regard to their beginning or conclusion, or the quantity of land. But if they could not ascertain the lines as they were originally run and marked upon the ground, then they must find the beginning, and run out the plaintiff's land according to courses and distances mentioned in the grant; that the letter A. as marked on the map of the Spanish grant was contemplated as its beginning, but whether

the letter A. was placed at the mouth of the branch or not, was a question of fact for their determination. To all which the plaintiff excepted, &c.

The plot is referred to in the report of the Surveyor General of West Florida, which accompanies th·concession, and is explanatory thereof. But the exact location of the land is not, stated, or so described on the plot as to show whether the southeastern corner, represented by A. is located at the mouth of the branch, or a few chains north-east of that point. Though the length of the lines is shown, and it is stated that the point B. was attained by "course and direction found and taken from the point A."

The survey made under an order from the Surveyor of the United States land for this State, describes the south-east corner as the starting point, and locates that corner forty links east of the mouth of a bayou, indicated by the grant.

Stewart, for plaintiff in error. The Spanish and American surveys are identical. Each commence on the bay at the mouth of a branch. The Spanish survey evidences this by the plot where the branch is traced and the letter A. affixed, which is recognized in the grant as the point from which courses and distances are computed. The American survey describes the branch as the starting point, and from thence the courses and the distances are to be ascertained.

The proof shows that there was such a branch as the plot indicates; also, that there was a line running back from its mouth. Evidence was offered to identify this as the line of the Spanish and American surveys, and the contest was as to the southern boundary of the tract.

The ascertainment of the south east corner of the land embraced by the concession, is not a question of fact. The recital in the Spanish and American surveys determine that it is the mouth of the branch, and this determination.is not the less conclusive because marks are found on trees corresponding with the assumed corner of the defendant. [6 Mass. Rep. 133; S Wend. Rep. 182.]

The evidences of title do not identify with exactness the land but refer to plots and surveys as showing the form, courses, distances and confines, "natural and artificial." These are

thus made a part of the title. [Hagan v. Campbell & Cleaveland, 8 Porter's Rep. 28-9, 31; 17 Mass. Rep. 211; 4 Wheat. Rep. 445.] The line assumed by the defendant does not appear to appertain to any survey, and cannot prevail against that, which the United States has recognized as the true one.

The commencement of a survey controls the other parts of it. [8 Wend. Rep. 183.] Natural boundary controls course and distance. [4 Wheat. Rep. 447; Hardin's Rep. 369; 2 Mass. Rep. 380.] The mouth of a creek overrules marked trees, because it is more stable, and cannot be falsified as trees may. [6 Cow. Rep. 717.]

To ascertain the south line, it was not permissible to begin the survey at B. and run south, for the survey begins and closes at A. [5 Hammonds Rep. 534.] Nor was it correct to run the eastern line the exact length indicated by the plot, it should be continued until the natural object called for was reached. [5 Pick. Rep. 135.]

The United States survey is evidence of the lines, as run on the ground, and must be so regarded; if it is in conflict with the Spanish, the latter must yield, or the grantee would be authorized to claim under both titles.

The question of boundary is not one exclusively of fact, but is a mixed question of law and fact. The instructions asked were proper, considering the nature of the evidence, and should have been given.                                    •

The counsel for the plaintiff also cited 1 Metc. & Perk. Dig. Title Boundaries, §15, 36, 60, 61, 63, 66, 67, 70, 76, 87, 89, 90, 99, 104, 105, 106.

CAMPBELL, for the defendant. The authorities all seem to establish that the decision of the Circuit Judge is correct. The line surveyed and marked on the ground is the original line, made and understood by the parties to the grant; the map is only to afford evidence of it in case of the decay of the monuments. [17 Johns. Rep. 29; 16 id. 257; 7 Wheat. Rep. 7; 1 Peters C. C. Rep. 496; 3 Peters Rep. 96; see also 1 Metc. and Perk. Dig. Title Boundaries, where the cases are collected.

COLLIER, C. J.—The question arising upon the prayer of the plaintiff for instructions to the jury is, whether the mouth of the branch traced on the map, which accompanies the Spanish and American surveys in question, is the true point of beginning, in order to ascertain the precise tract of land embraced by them.

It is true, that where a map is referred to in a grant or deed as indicating what is intended to be conveyed, it is regarded as a part of the conveyance, and may be referred to for the purpose of aiding in the identification of the land, showing its form, location, &c. Yet it can rarely, if ever, happen that it will be drawn with so much exactness as to show, without the aid of parol proof, at what precise point corners and lines are placed and marked. The identical monument or boundary referred to in a conveyance, is always subject to parol evidence; and when disputed, it must be left to a jury to say which was intended. [Claremont v. Carlton, 2 N. Hamp. 373; Blake v. Doherty, 5 Wheat. Rep. 359; Linscott v. Fernald, 5 Greenl. Rep. 496; Wing v. Burgis, 13 Maine Rep. 111; Waterman v. Johnson, 13 Pick. Rep. 267.] In the last case cited the deed described land as bounded on a pond, designated by name; it appeared that it was a natural pond, which was raised more or less at different times, by means of a dam existing and in use at the time of the conveyance, so that there was a latent ambiguity. *The Court held*, that parol evidence was admissible to show, that a certain line was agreed on, and understood at the time of the conveyance as the boundary of the pond.

It has been held, that natural or artificial monuments control the plan of survey referred to in a deed, [Esmond v. Tarbox, 7 Greenl. Rep. 61;] and they also as a general rule are considered to furnish more certain means of discovering the land conveyed than courses and distances. [Davis v. Rainsford, 17 Mass. Rep. 207; Wendell v. The People, 8 Wend. Rep. 183; Preston's Heirs v. Bowmar, 6 Wheat. Rep. 580.] In Jackson v. Moore, [6 Cowen's Rep. 717,] the Court say, " What is *most material* and *most certain* in a description, shall prevail over that which is *less material* and *less certain.* Thus, course and distance shall yield to natural and ascertained objects; as a river, a stream, a spring or a marked tree." [1

Cow. Rep. 612; 5 Cow. Rep. 371; 7 Wheat Rep. 10.] But this rule is not without its exceptions, these are to be ascetained by a reference to the reason or principle of the rule itself. *Ratione cessante, ipsa lex cessat.* Thus, where by giving to monuments a controlling influence, absurd consequences would ensue, or where it is obvious that courses and distances furnish the most certain guide to the location and quantity of the land, the latter should be followed. [Davis et al v. Rainsford, 17 Mass. Rep. 210; Chinoweth et al v. Haskell's lessee et al, 3 Peters Rep. 92.]

In Jackson v. Wilkinson, [17 Johns. Rep. 156,] it was determined, that where the place of beginning a survey is fixed and certain, the line must be run from that point, according to the courses and distances, in order to ascertain the precise position of a tract of land. [See also Wendell v. The People, 8 Wend. Rep 183.]

When a line is actually run, it is said that it will, as traced, constitute the true boundary. "But whether the line was ever actually run or marked, and if it were so designated, *where it was,* are not deductions of law or matters of construction, but are facts to be ascertained and settled by a jury, and a Court should not, by construction, fix the line, if there' be any proof whatever tending legitimately to show, that it was actually run, and where." [Dimmitt v. Loshbrook, 2 Dana's Rep. 1.]

The charge prayed assumed as a *legal conclusion* that the letter A. as marked on the map, was intended to designate the mouth of the branch, from the fact that they seemed to be placed at the same point. None of the papers made by the Spanish authorities for the purpose of conferring a title on the grantees, make any reference in terms to the branch; they speak of the Bay of Mobile being the eastern boundary of the tract, refer to the map, and A. as the point where the survey begins. Now it seems to us that it would be a most unwarrantable assumption, to hold that the place intended by A. is identical with the mouth of the branch, merely because of their apparent proximity upon paper. But suppose the Spanish concession *in totidem verbis* had recognized the mouth of the branch, as the north-east corner of the tract at the time it was surveyed would it not be admissible to show, that owing to alluvial de-

posits and other causes. the locality had been changed, so as by an adherence to it, greatly to increase or diminish the quantity which passed by the grant, or to change the form of the plot? Would that point still control the survey, as the place of beginning? We should incline to the opinion, that it would under such circumstances be allowable to show, the precise point on the bay intended as the corner, though the natural object designated had been gradually removed by natural causes. The branch is doubtless an inconsiderable body of water to which no riparian privileges are attached, and by the mere shifting of its bed or mouth cannot be allowed to subtract from, or add to, the soil of contiguous proprietors.

The plaintiff's counsel is mistaken in supposing that the survey made under the authority of the United States, places the north east corner at the mouth of the branch. It is expressly stated in the return made to the surveyor, and approved by him, that that corner is "forty links east of the mouth of a bayou, as indicated by the grant," &c.

The prayer of the plaintiff, as the case is presented by the bill of exceptions, appears to have been for an entire charge, though it embraces several distinct propositions; and as it mistook the law in one very important particular, it was not error to overrule it *in toto*. To escape the consequences of a sweeping decision against him, it is most advisable for counsel to move instructions upon each point separately ; the Court is not bound to distinguish what is proper from what is improper. This point has been repeatedly adjudged, both by this and other Courts.

The charge given laid down the law correctly. .It assumes what the facts show to be true, that the controversy was in relation to boundaries, and that the jury were to inquire whether the land in controversy was covered by the grant and patent certificate which were given in evidence. That they should, if practicable, ascertain from the evidence the lines of the land covered by the plaintiff's claim, as they were run and marked on the ground ; if these could be ascertained, the land within them was the plaintiff's without regard to quantity or the beginning or conclusion of the lines. But if the lines could not be ascertained as originally run and marked, then they must find the beginning, and run out the land according to courses

and distances mentioned in the grant. That the letter A. marked on the map accompanying the grant, indicated the place of beginning; whether that was at the mouth of the branch or not, was a question of fact for the determination of the jury. That this charge is unexceptionable, it is only necessary to refer to the law as we have stated it from the books cited.

From the view taken it results that the judgment of the Circuit Court is free from error, and it is consequently affirmed.