# Ryan v. The State.

### Indictment for Murder.

1. *Special venire; motion to quash.*—On a trial under an indictment for murder it being made to appear that the list of jurors served on the defendant, before trial, failed to show what persons had been summoned to serve as petit jurors for the week of the defendant's trial, and that the return of the sheriff on the venire for said week showed that two of the jurors whose names are on the list served on the defendant, were not found, the venire should be quashed on motion of the defendant if made before entering on the trial, but not if the motion is made after entering on the trial.

2. *Same; on appeal.*—Where on appeal, in such a case, the bill of exceptions is silent as to whether the motion was made by the defendant before or after entering on the trial, all presumptions will be indulged by the appellate court against error and in favor of regularity, and the ruling of the trial court on the motion will be sustained.

3. *Objection to testimony.*—On a trial for murder where the evidence tended to show that the defendant, the deceased and others were in defendant's room, the defendant and deceased talking and drinking together; that one subject of conversation was the Catholic church and, on this subject, some disputation arose between the defendant and deceased, and that there was something in the nature of a quarrel between them on another subject; that all differences were apparently reconciled between them, whereupon there was a lull in the conversation between them, and deceased then began talking with a third person in the room, and after continuing this conversation, in which the defendant did not for some time participate, deceased turned to the defendant in a wild and furious manner threatening and finally assaulting and severely beating him, and deceased said while beating the defendant "that he would teach him how to abuse the Catholic church"; and defendant after testifying on the trial, in his own behalf, that he and the deceased "got into a discussion about the Catholic church" was asked by his attorney to state all that was said between him and the deceased in that discussion, and the court sustained an objection to this proposed testimony; Held, by a majority of the court, that the lower court erred in excluding the details of the conversation between the defendant and deceased

relative to the Catholic church. (McClellan, J., and Haralson, J., dissenting.)

4. *Confinement of defendant before trial as affecting measure of punishment on conviction.*—The fact that the defendant has been confined in jail for eighteen months or more awaiting trial under the charge for which he was committed is not a circumstance the jury can take into consideration, on conviction, in mitigation of the punishment they may impose.

APPEAL from the Circuit Court of Walker.

Tried before the Hon. JAMES J. BANKS.

The defendant was indicted and tried for murder. A motion was made by him (but whether made before or after entering on the trial does not appear from the bill of exceptions) to quash the *venire* for the trial of the cause on the following grounds, among others : "1. Because the list of jurors served on the defendant failed to show what persons had been summoned to serve as petit jurors for the second week of this term of the court, and the return of the sheriff on the *venire* for the second week showed that S. R. Harris and William Madison were not found, and their names were on the list served on the defendant for the trial of this cause." It was agreed in open court that the facts set forth in the motion were true. The court overruled the motion and to this action of the court the defendant duly excepted. The testimony tended to show that on the morning of the day the deceased was killed the defendant and deceased were at a boarding house together and the defendant was drinking. Some one pulled his chair from under him and as he was getting up he told deceased he would kill him before night; whereupon he was told by some one present that it was not deceased who pulled his chair from him but another person and naming him. The defendant exclaimed "the little devil," whereupon all laughed at him. Defendant and deceased both ate dinner at said boarding house and after dinner the defendant and one Botrill went to the defendant's house, which was a one-room house occupied by defendant alone. The defendant told deceased not to come to his house but deceased did go by a different route from that taken by the defendant. The defendant, deceased and others, were at the defendant's house drinking and talking, all apparently friendly, when the defendant and deceased "begun arguing scripture;" during this discussion the defendant speaking to Botrill, said "where is my knife? That is a bad chap over there." Botrill answered, "your knife is at my house." After this defendant and deceased talked in an apparently friendly manner until there was a lull in the conversation when the deceased got up and began talk-

[Ryan v. The State.]

ing with one Patton, the defendant remaining seated where he and deceased had been conversing together, and Botrill having then become dead drunk." While talking with Patton the deceased turned upon the defendant "in a wild and furious" manner and pressed the defendant into the corner of the room cursing and threatening him and finally knocked the defendant down and choked him until he was unconscious. While assaulting the defendant deceased said, "I will show you how to abuse the Catholic church, you damned heretic."

The defendant while testifying in his own behalf, stated, among other things, that after taking several drinks together he and deceased "got into a discussion about the Catholic church." His attorney then asked him to state "all that was said between defendant and deceased about this matter." The solicitor "objected to this testimony" and the court sustained the objection. The defendant's attorney then stated to the court that he "proposed to prove that this was the quarrel which led up to the killing" but the court adhered to its ruling, remarking that the particulars of the discussion about the Catholic church had nothing to do with the case, and the defendant duly excepted. There was other testimony not material to the questions decided on this appeal.

The defendant, among other charges, requested the court in writing to give the following, to-wit: "If the jury convict the defendant they may consider the fact that the defendant has been confined in jail about 18 months since the commission of the offense in mitigation of the punishment they impose."

The court refused to give this charge and the defendant duly excepted to such refusal.

The solicitor, among other charges, requested the court in writing to give the following: "In fixing the punishment of the defendant the jury have no right to look to the fact that the defendant has been confined in jail for 20 months past."

To the giving of this charge the defendant duly excepted.

COLEMAN & SOWELL, for the appellant, cited *Parsons v. The State*, 22 Ala. 50; *Thomas v. The State*, 94 Ala. 74; *Boggs v. The State*, 45 Ala. 30; *Roberts v. The State*, 68 Ala. 515; *Wesley v. The State*, 52 Ala. 187; *Garrett v. The State*, 76 Ala. 18; *Burns v. The State*, 49 Ala. 375; *Riddle v. The State, Ib.* 389; *State v. Autery*, 1 Stew. 399.

WM. L. MARTIN, Attorney-General, for the State, cited: 3 *Brick. Dig.* p. 81 § 51. *Thomas v. The State*, 94 Ala. 74;

[Ryan v. The State.]

*Domingus v. The State,* 94 Ala. 9; *McAnnelly v. The State,* 74 Ala. 9; *Gray v. The State,* 63 Ala. 66; 1 *Green Ev.* (15 Ed.) § 108; *Whar. Crim. Ev.* § 263; 3 *Brick. Dig.* p. 188 ; *King v. The State,* 90 Ala. 612; *Cleveland v. The State* 86 Ala. 1; *Williams v. The State,* 81 Ala. 1; *Tidwell v. The State,* 70 Ala. 33; *Armor v. The State,* 63 Ala. 173; *Ross v. The State,* 62 Ala. 224; *Springfield v. The State,* 96 Ala. 81; Code 1886 § 4290.

McCLELLAN, J.—A motion was made to quash the special *venire* on the ground that the "list of jurors served on the defendant failed to show what persons had been summoned to serve as petit jurors for the second week of this term of the court, and the return of the Sheriff on the *venire* for the second week showed that S. R. Harris and William Madison were not found, and their names were on the list served on the defendant for the trial of this cause." The facts thus stated in the motion were admitted to be true. The motion was denied. If it was made before the trial was entered upon it should have been granted. If made after the trial was entered upon it was properly overruled. *Thomas v. State,* 94 Ala. 74. The bill of exceptions does not inform us at what time with reference to the beginning of the trial the motion was made. No presumption can be indulged in that regard which would put the lower court in error. To the contrary all presumptions are against error and favorable to regularity. The bill of exceptions must be construed against the appellant where, as here, it admits of two constructions, one leading to reversal and the other to affirmance of the judgment below. Error must be affirmatively shown. It is not affirmatively shown here in that it does not appear but that the motion to quash the *venire* was made at a time when it was the court's duty to deny it whether inherently meritorious or not. 1 Brick. Dig. pp. 247, 251, §§ 72a, 120 *et seq;* 3 Brick. Dig. p. 81, § 51; *Kellar v. Taylor,* 90 Ala. 289.

The evidence tended to show that defendant, deceased and others were in defendant's room; the defendant and deceased had been drinking together and talking. One subject of conversation was the Catholic Church, and on this subject some disputation arose between defendant and the deceased. There appears also to have been something in the nature of a quarrel between the parties on some other subject. All differences between defendant and deceased were apparently amicably accommodated, whereupon there was a lull in the conversation between them and then de-

ceased began talking to a third person in the room and after continuing this conversation, in which defendant, it seems, did not participate, for some time, he "turned to the defendant in a wild and furious manner" cursing and threatening, and finally assaulting and severely beating him ; and deceased said while beating defendant that "he would teach him how to abuse the Catholic Church." The defendant testifying in his own behalf stated that he and deceased "got into a discussion about the Catholic Church" and he was then asked by his attorneys to state all that was said between him and the deceased in that discussion. The court sustained an objection to this proposed testimony. We do not think what was said in the conversation between the parties with reference to the Catholic Church constituted any part of the difficulty in which one of them was killed : it was not *res gestæ* of the main transaction, the only transaction which is brought by the indictment under judicial investigation. The conversation was an appreciable time before the difficulty, and, while it may have been characterized by ill feeling between the parties, and may even have been productive of deceased's subsequently executed purpose to assault and beat defendant, there was an interval between the two of apparent amity and good feeling. Thus separated it cannot in any just sense be said that the conversation or dispute and the fatal difficulty were one and the same, or constituted parts of one and the same, transaction or main fact under inquiry.

The details of the previous discussion could only serve at most to show the animus with which the subsequent assault was made, or, in other words, that deceased bore ill will to the defendant and this is equally shown by the abstract fact of the former dispute or difficulty, that is the fact of the former difficulty, equally with the details of it tends to show the only thing competent to be shown in this connection, namely, the state of feeling between the parties on the part of the deceased toward the defendant. And in such case the law to the prevention of a multiplication of issues is clear that the details or particulars of prior discussion or difficulties cannot be adduced in evidence.

The only effect of the proposed testimony would have been to show who was at fault in the discussion or difficulty, and this was wholly an irrelevant inquiry. The subsequent assault by deceased, if he committed an assault, would in no wise be palliated or aggravated, nor would defendant's subsequent conduct be made to appear in any different light, by any conclusion possible to reach on such inquiry ;

in the language of the judge below "the particulars of the discussion about the Catholic Church had nothing to do with the case."

On the point just considered the foregoing is the opinion and conclusion of Justice Haralson and the writer. A majority of the court hold that the trial court erred in excluding the details of the conversation between defendant and deceased relative to the Catholic Church.

The custody of an alleged criminal before the trial of charges against him is in no sense to be considered as punishment for the offense. If it were punishment, its imposition would be violative of the organic law of the land. It is a consequence from the charge of guilt and necessary to the end that the question of guilt *vel non* may be determined, and upon and after such determination if against the defendant, that adequate punishment may be inflicted, but it can no more be said to be a part of the punishment itself or to be proper for consideration in fixing adequate punishment than the ills and inconveniences, the stings of remorse which a criminal who eludes arrest and absconds is subjected to can be said to be a part of his final punishment or proper to be taken into consideration in the imposition of the punishment which the law lays against the crime. The court's rulings on this subject are free from error.

For the error which a majority of the court holds was committed in excluding the particulars of what was said between the defendant and deceased with reference to the Catholic Church, the judgment of the circuit court must be reversed. The cause is remanded.

