[Carwile v. The State.]

# Carwile *v.* The State.

## *Murder.*

(Decided April 18, 1905.   39 So. Rep. 220.)

1.  *Indictment; Quashing; Record; Duty of Clerk; Organization of the Grand Jury.*—An indictment will not be quashed because the clerk has failed to make a record of the organization of the grand jury at the time the motion to quash is made, although he had ample time to do so notwithstanding section 934, paragraph 8, Code 1896, requires him to keep a book on which to enter the minutes of the various proceedings, and section 2641 requires the reading of the minutes each morning in open court, provided, the organization of the grand jury is recorded before the court adjourns for the term.

2.  *Criminal Law; Appeal; Presumption of the Regularity of the Proceedings.*—On appeal this court may presume that the trial judge ascertained that the jurors possessed the necessary legal qualifications, before the organization of the jury, in the absence of proof to the contrary.

3.  *Jury; New Indictment; Drawing Special Venire.*—The special venire had been drawn for the trial of the defendant. Afterwards, but on the same day, the indictment was quashed, and a new indictment preferred for the same offense; and the court proceeded to draw a new venire for .the trial of the cause.  Held, not error.

4.  *Criminal Law; Trial; Service of Venire on Defendant; Suffi-.ciency.*—Under section 5273, Code 1896, a copy of a venire containing the names of a person drawn as a regular juror but who had not been served is not sufficient, nor a compliance with said section.

5.  *Jury; Venire; Quashing; Grounds.*—The failure to comply with the requirements of section 5273 of the Code of 1896, is not cured by the provisions of section 4997 or 5007 of the Code.

6.  *Criminal Law; Appeal; Harmless Error.*—The service upon defendant under a charge of murder of ·the copy of the venire containing the name of a regular juror drawn but not summoned, under section 5273, is not such an error as is cured or covered by section 4333, Code 1896.

[Carwile v. The State.]

7.  *Witnesses; Impeachment; Explanations.*—It is proper to permit
    the witness to explain why facts were not disclosed on a prior
    examination where such witness is .sought to be impeached
    by a showing that he failed to divulge the fact which he had
    then narrated, on his former examination.

8.  *Homicide; Evidence; Admissibility.*—It was permissible for the
    state to show by a witness who had knowledge of the facts,
    that decedent usually carried his bill book in his inside breast
    pocket, where the theory of the state was that the defendant
    killed deceased to get possession of certain papers which de-
    ceased held against him and which were in the bill book be-
    longing to deceased.

9.  *Same.*—It was permissible to show that defendant had been try-
    ing to sell the crop on which deceased held a mortgage, it
    having been previously shown that deceased had a mortgage
    on defendant's crop, and the theory of the state being that
    deceased was killed in order to obtain the mortgage, which
    mortgage was produced by defendant with the explanation
    that he had paid it, when the coroners inquest was held.

10. *Criminal Law; Appeal; Questions Reviewable; Witnesses; Ex-
    amination.*—Where the record shows that the statement of a
    witness was made on cross examination and it does not ap-
    pear that it was not made in response to a question pro-
    pounded by the cross examiner, the defendant in this instance,
    objection to such statement is not available to defendant on
    appeal.

11. *Criminal Law; Evidence; Declarations by Accused.*—The decla-
    ration by defendant, voluntarily made to his brother, although
    in the custody of the arresting officer, that the killing was ac-
    cidental, is admissible, not as a confession, but in explanation
    of his conduct.

12. *Same; Opinion.*—A witness may not testify that one was follow-
    ing the buggy of another "'in a gait in which a man would
    ordinarily follow a runaway team," the same being an opinion.

13. *Same; Instruction.*—An instruction asserting that the evidence
    of a verbal admission by defendant must be weighed with cau-
    tion because subject to mistake from accused's failure to clear-
    ly express himself, and of witnesses failing to understand and
    their liability to alter expressions used, is argumentative and
    properly refused.

14. *Same; Instructions; Good Character.*—An instruction asserting
    that proof of good character may create a reasonable doubt
    of guilt, though no such doubt would exist but for such proof,
    is properly refused.

15. *Same; Argumentative Instructions.*—An instruction asserting
    that accused had the right to carry arms and he did no wrong

37

[Carwile v. The State.]

in carrying the same, if the evidence fails to disclose that he was carrying arms for an offensive purpose, is argumentative and properly refused.

16. *Same; Reasonable Doubt.*—An instruction that a reasonable doubt is such as arises, not only from evidence offered tending to prove defendant's innocence, but may also arise from the absence of evidence proving guilt, is misleading as calculated to mislead the jury to the conclusion that any evidence tending to show innocence would be sufficient to create a reasonable doubt and is properly refused.

17. *Same.*—A charge asserting that the absence of satisfying evidence before the jury may offer ground for reasonable doubt is a proper charge and its refusal error.

18. *Same.*—Instructions that the law is as fully vindicated in the acquittal of the defendant not proven guilty beyond a reasonable doubt as it is in the conviction of one thus shown to be guilty, and that the jury has as fully discharged its duty when they acquit where guilt is not proven beyond a reasonable doubt as where they convict when guilt is so proven, are misleading and properly refused.

19. *Homicide; Instructions; Motive.*—An instruction that the failure of the state to prove a motive on accused's part calculated to prompt him to take deceased's life, considered in the light of the evidence, is a circumstance in defendant's favor, gives undue prominence to one phase of the evidence and is properly refused.

20. *Same.*—A charge asserting that while evidence of a motive to kill decedent is admissible, it is of an inconclusive character, is calculated to lead the jury to infer that the court thought such evidence insufficient and is properly refused.

APPEAL from Marshall Circuit Court.

Heard before HON. JAMES A. BILBRO.

E. Monroe Carwile was convicted of murder in the first degree. At the trial a list of fifty persons were drawn as a special venire. On the day this venire was drawn the indictment against the defendant was quashed and a new indictment was preferred for the same offense, and thereupon the court proceeded to draw a list of different persons from those drawn on the first venire, for the trial under the new indictment. To this proceeding the defendant objected and reserved exceptions to the action of the court. The facts concerning the motion to quash the venire, and the trial court's ac-

tion thereon sufficiently appear in the opinion of the court. The deceased came to his death as a result of a gun shot wound in the head. The evidence for the state tended to show that deceased had a mortgage on defendant's property and that he had gone over to defendant's house that morning for the purpose of removing the crop when defendant asked him to take him to a certain point where he thought he could get the money to pay the mortgage. Defendant and deceased left defendant's in deceased's bugy and sometime on the way a gun shot was heard and in a few minutes the buggy came up the road with deceased's body in it, which fell out before the horses were stopped. It was shown that defendant had a gun with him and the gun was found standing by a tree on the roadside. Deceased's papers were found scattered around the roadside, but the mortgage was not among the papers. Defendant produced the mortgage at the coroner's inquest with the explanation that he had paid the mortgage and it had been turned over to him. One Amos testified that he arrested the defendant on instructions from the coroner and while in his custody defendant asked to be carried to his brother at a certain barber shop where he found his brother and engaged in a conversation with him; that during this conversation defendant told his brother of the killing, mentioned the mortgage which he had produced at the coroner's inquest and stated that the killing was accidental. It was also shown that no threats or inducements were offered or held out to the defendant prior to the conversation and that the officer did not engage in the conversation. It was shown over the objection of the defendant that the defendant had endeavored to sell the corn covered by the mortgage. It was also shown that deceased had a bill book in which he kept his papers and that it was his custom to carry this book in his inside coat pocket. The defendant offered to show by a witness that when the witness first saw defendant on the morning of the killing the defendant was following the buggy of the deceased "in a gait in which a man would ordinarily follow a runaway team. The court declined to allow this testimony. The other facts sufficiently appear in the opinion. The court refused to the defend-

[Carwile v. The State.]

ant the following written instructions: (1) The court charges the jury that, in considering the evidence of statements made by the defendant, they will do it in the light of facts that it is the repitition of oral statements, that such testimony is subject to much infirmity and mistake, that men often fail to express clearly what they mean, that the witness often fails to understand correctly what the party actually did say, and that the witness often unintentionally alters some of the expressions of the party. (2) The court charges the jury that evidence of verbal admissions by a person charged with a crime is to be received and weighed by the jury with great caution. This evidence, consisting of repitition of oral statements, is subject to much imperfection and mistake. The party himself may have been misinformed, or may not have clearly expressed his own meaning, or the witness may have misunderstood. It frequently also happens that the witness unintentionally altering a few expressions really used, gives an effect to the statement completely at variance with what the party did actually say. (3) The court charges the jury that if the defendant had proved a good character as a man of peace the law says that such good character may be sufficient to create a reasonable doubt of his guilt, although no such doubt would have existed but for such character. (4) The court charges the jury that if the state has failed to prove a motive on the part of the defendant to kill Snow reasonably calculated to prompt him to take Snow's life, then this is a circumstance in the defendant's favor to be considered in the light of all the evidence in the case. (5) The court charges the jury that evidence of a motive on the part of the defendant to take the life of the deceased, while admissible for the consideration of the jury, yet, it is testimony of a weak and inconclusive character. The jury should be guarded as to the importance they attach to such evidence. (6) The court charges the jury that under the laws of this country the defendant had the right to carry arms, and if the evidence fails to show that he was carrying it on the day Snow was killed for an offensive purpose, then he did no wrong in carrying the gun. (7) A reasonable doubt is such as arises not

[Carwile v. The State.]

only from the evidence offered to the jury which tends to prove the defendant's innocence but may also arise from the absence of sufficiently strong and convincing evidence before the jury tending to prove his guilt. (8) The absence of sufficient satisfying evidence before the jury may offer ground for reasonable doubt of the defendant's guilt. (9) The court charges the jury that the law finds as full and complete vindication in the acquittal of a defendant not proved beyond a reasonable doubt to be guilty, as it does in the conviction of one shown to be guilty beyond a reasonable doubt. (10) The court charges the jury that their duty is as fully discharged when they acquit a man whose guilt is not proven beyond a reasonable doubt as it is when they convict a man whose guilt is shown by that measure of proof.

The defendant was convicted and sentenced to imprisonment for ninety-nine years.

STREET & ISBELL, for appellant.

MASSEY WILSON, Attorney General, for the State.

ANDERSON, J.—The defendant moved to quash the indictment because the record did not show an organization of the grand jury. Court had been in session several days and the clerk had ample time to have written up the organization of the grand jury and the judge ought to have required him to do so. Paragraph 8 of section 934 of the Code of 1896 says it is the duty of the clerk "To keep a book, in which must be entered the minutes of each day's proceedings during the term of the court, and the orders and judgments, in the order in which they are made or rendered." Section 2641 says, "The minutes of the court must be read each morning in open court, and, on the adjournment of the court, must be signed by the judge." The law certainly contemplates that the clerk shall write up the proceedings of each day and read the minutes the next morning in open court in order that the judge can determine the correctness of the entries. This action is directed by law and a compliance therewith tends to keep down dis-

order and confusion and prevents a congestion when the time for adjournment arrives. It is no hardship on the clerk as the minutes must be written up in the end and it is just as well to record the proceedings daily as the law directs. There are clerks who write the minutes of each day and read the same in open court the next morning, and it is the writer's experience that it is a safeguard against errors and irregularities. This court has held, however, that section 2641 is directory, and a failure to sign the minutes does not effect the validity of the judgment or decree.—*Bartlett v. Long,* 2 Ala. 161; *Frazier v. Prayton,* 36 Ala. 691.

It appears from the record in the case at bar, that this case was tried at the term the indictment was found and though the organization of the grand jury was not recorded at the time the motion was made, that it was written up before the court adjourned for the term. It is settled law that the judgments of the court are under the full power of the court during the term of the rendition.—*Neal v. Caldwell,* 3 Stewart, 134; 3 Mayfield's Dig. p. 1166, § 675. It follows that the court had judicial knowledge, or in fact actual knowledge of its orders and judgments rendered during the term and it was sufficient if the entries were made before the court adjourned.—15 Ency. Pl. & Pr. 205-6 and cases cited.

Another ground of the motion was that one of the grand jurors, Hunt, was a resident of another county. There was no proof of this averment and we can presume that the judge ascertained that the grand jurors possessed the legal qualifications to serve, before organization. But the presumption is needless in this case as the bill of exceptions recites the fact.

After the first indictment was quashed and the defendant was arraigned under the new one, the action of the judge was eminently correct in drawing another venire. We do not think the defendant can complain because the trial judge did not put upon him a venire that was drawn out of the box previous to the return of the indictment under which he was tried.

The defendant before entering upon the trial moved to quash the venire, because no copy was served on him or his counsel as required by law, and becaues the copy ser-

[Carwile v. The State.]

ved on him was not a copy of the venire to try the case; because it contained the name of one D. M. Reeves as a regular juror and the said Reeves was not summoned. It was admitted that said Reeves was on the list served on the defendant; that he was drawn as a regular juror to serve the week this cause was set for trial, but that he was never summoned. This case was set for a day of the succeeding week and under the statute, the venire drawn by the judge and the regular jurors drawn and summoned constituted the venire to try the case.—§ 5005 of Code of 1896. Section 5276 requires that "a copy of the venire to try the case" be served on the defendant or his counsel, etc. It is plain that no such copy was served. The juror Reeves not being summoned should not have been on the list and a paper containing his name was in no sense a copy of the venire to try the case. And the appearance of one or many names that do not belong thereon or the omission of names that do deprive the paper served of being a copy as required by law. Section 4997 of the Code of 1896, which provides that, "no objection can be taken to any venire facias for a petit jury except for fraud in drawing or summoning the jurors," has no application to this question. The objection was not aimed at the venire facias but at a failure to serve a copy of the venire as required by law. Nor does the provision of section 5007, that "a mistake in the name of any person summoned as a juror, either in the venire or in the list of jurors delivered to the defendant, is sufficient cause to quash," have any application to this question. The motion complains of no mistake in the name of any juror but says a name was served on him that should not have been so served. We cannot say that this was error without injury under section 4333 of the Code of 1896. As the defendant should not have been put to trial until a copy of the venire was served on him, the trial court erred in not sustaining the motion to quash the venire.—*Ryan v. State,* 100 Ala. 105, 14 South. 766; *Burton v. State,* 107 Ala. 108, 18 South. 284; *Thomas v. State,* 94 Ala. 74, 10 South. 432.

The trial court did not err in overruling defendant's objection to witness Wright, "How came you to tell me

about this conversation." The witness had been examined by the defendant on cross-examination and an effort was made to contradict or impeach him, by showing that he failed to divulge facts upon another examination that he was then narrating and it was perfectly legitimate for him to explain why the facts were not disclosed then and why divulged on the second trial. As a rule, witnesses cannot testify to their intent, reasons or motives, but there is an exception to the rule to the effect that when his impeachment is attempted by contradictory statements, acts and conduct, he may in rebuttal explain, and may be asked why he made certain statements.—*Williams v. State,* 123 Ala. 39, 26 South. 521.

Defendant objected to the evidence of McCluskey, "Deceased usually carried his bill book in his inside breast pocket." This court seems to have become committed to the proposition that a witness can testify to the habit or custom of another.—*Naugher v. State,* 116 Ala. 463, 23 South. 26; *Wiley v. State,* 99 Ala. 146, 13 South. 424. This is true when such custom or habit is known to the witness testifying.

The state's theory was that the defendant killed deceased in order to get certain papers he held against him and which were in the bill book referred to, and that said book was found in the road and that it must have been extracted from the pocket of the deceased, and was therefore relevant.

The defendant also objected to testimony of witness McCluskey, "I don't remember ever seeing Snow carry his bill book in his overcoat pocket." The record shows that this was said upon cross-examination, and so far as we know many have been in response to defendant's question.—*Tolliver v. State,* 94 Ala. 111, 10 South. 428.

The court did not err in overruling the defendant's objection to evidence of witness Holiday and Washburn as to buying corn from defendant. The evidence showed that the deceased had a mortgage on his crop, that said mortgage was in the bill-book and the fact that defendant had been selling or trying to sell the corn, was a circumstance to increase his motive or desire to get the mortgage from the deceased.

There was no error in admitting the hat in evidence.

The evidence of the witness Amos was properly admitted. The statement was made by the defendant, not as a confession but as an explanatory statement to his bother. The witness Amos testified it was voluntary and the record does not show that it was made in response to any question propounded by the said Amos. On the other hand the defendant's. brother was with them and the defendant had been taken to the barber shop by Amos at his request in order that he might talk with his brother.—*Jones v. State,* 137 Ala. 12, 34 South. 381; *Christian v. State,* 133 Ala. 109, 33 South. 64; *White v. State,* 133 Ala. 122, 32 South. 139.

The court did not err in excluding the evidence of witness Price, that defendant was following Snow's buggy, "in a gait in which a man would ordinarily follow a runaway team." In the first place it was the mere opinion of the witness. Second, It was permitting the defendant by his own speed of locomotion to make evidence for himself.—*Pate v. State,* 94 Ala. 14, 10 South. 665.

Charge 2 was argumentative and was properly refused, as was the case with charge 1. Charge 3 has often been condemned.—*Eggleton v. State,* 129 Ala. 129, 30 South. 582. Charge 4 was properly refused. It singles out and gives undue prominence to one phase of the case. Charge 5 was bad. It was misleading, and the jury might infer therefrom, that the court was holding that the evidence was weak and insufficient, and it was not the duty of the court to pass upon the weight and sufficiency of the evidence. Charge 6 was argumentative. Charge 7 was bad. It tends to mislead the jury to the conclusion that any evidence, tending to show innocence' would be sufficient to create a reasonable doubt of guilt. Charge 8 was good and should have been given. Charges 9 and 10 were argumentative and were properly refused.

Reversed and remanded.

McClellan, C. J., Tyson and Simpson, JJ., concur.