45 So.2d 786

**NOLEN v. STATE.**

7 Div. 80.

Court of Appeals of Alabama.
March 7, 1950.

Rehearing Denied March 28, 1950.

A. A. Carmichael, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

Hugh Reed, Jr., of Centre, for appellant.

**HARWOOD, Judge.**

This appellant has been convicted by a jury of the offense of rape.

The evidence presented by the State, if believed by the jury under the required rule, is plentiful in its tendencies establishing the elements of the offense charged.

The locus of the alleged offense was without dispute in Calhoun County. The State introduced evidence directed toward showing that although such locus was in Calhoun County, it was nevertheless within a quarter of a mile of the boundary line separating Cherokee and Calhoun counties, and thus within the jurisdiction of either county. Section 95, Title 15, Code of Alabama 1940.

The evidence presented by the State shows that Sheriff Garrett of Cherokee County was taken to the locus of the alleged offense by a police officer who apprehended appellant at or near the place. When this police officer first arrived on the scene appellant and two other men were holding the prosecutrix, but fled upon his arrival. A wrist watch band which prosecutrix identified as hers was found at the place. This with the testimony of the prosecutrix and other witnesses served to locate the place of the alleged crime. Moore v. State, 30 Ala.App. 552, 9 So.2d 146.

Sheriff Garrett testified that he accompanied Mr. Spillers, county engineer for the county of Cherokee, when a survey was made to determine the location of the line between Cherokee and Calhoun counties. Mr. Spillers also testified as to this survey.

The tendency of the testimony of Sheriff Garrett and Mr. Spillers, witnesses for the State, concerning this survey was to the effect that the survey was started at a State highway marker denoting the line between the two counties, and ran to a point on a county road locally recognized as being the point where the county line crossed the county road. The locus of this offense was 860 feet in Calhoun County from the line thus established. Sheriff Garrett also testified that "Naugher, LeFard, and Sanford" own "that land," and that Mr. Sanford and Mr. Naugher had told him "about where" the line was.

During his cross examination Mr. Spillers testified that line established as the county line by his survey began and ended in Section 26, Township 12, south of Range 10, east, though in another part of his cross examination he testified that the line was in "Township 12, south of the principal point, which is at Huntsville."

In his brief appellant's counsel urges that: "The Trial Court, as well as this court, will take judicial knowledge of the location of boundaries of its political subdivision and it will take judicial knowledge that the county line between Cherokee County and Calhoun County does not touch Section 26 of Township 12, Range 10, nor does the boundary thereof run a course of South 88 degrees East. The locations of county lines are matters which this court will judicially know and this court will judicially ascertain that the county line between Calhoun and Cherokee Counties at this particular point crosses Section 35, in Township 12, Range 10, rather than across Section 26 as testified to by this expert witness. Consequently, it affirmatively appears that this attempted survey was incorrect, based upon this survey of witness Spillers, which he testified was begun at a point which he did not establish to be on the County line."

It is a general rule that in this State that courts will take judicial notice of the boundaries of counties, Elmore County v. Tallapoosa County, 221 Ala. 182, 128 So. 158, and of official government surveys of this State. Scheuer v. Kelly, 121 Ala. 323, 26 So. 4; Nichols v. Nichols, 192 Ala. 206, 68 So. 186.

However, it is also fundamental that: "In order that a matter may properly

252

be a subject of judicial notice it must be 'known'—that is, well established and authoritatively settled. It is clear that uncertainty or difference of belief in respect to the matter in question, will operate to preclude judicial notice thereof. * * * The test is whether sufficient notoriety attaches to the fact involved, so as to make it safe and proper to assume its existence without proof." 20 Am.Jur., Sec. 19, and cases there cited.

In Doe ex dem. Miller v. Cullum, 4 Ala. 576, it is said: "The boundary. lines of counties are but seldom marked by natural objects, or artificial monuments, discernible to the naked eye. Often, they are referred to the lines of the governmental surveys of the public lands, and sometimes to places designated by names, which change, or become obsolete. There is no provision of law requiring the survey and marking of the boundaries, and a record of it as evidence of the fact. The boundary is of consequence subject to parol evidence; and, if its location is a matter of dispute generally, it must be left to the jury to say where is its true location."

The above observation was qouted with approval in the more recent case of Elmore County v. Tallopoosa County, supra.

The very question we are now considering, that is the exact location of the boundary line between Cherokee and Calhoun Counties was before this court in the case of Ullman Bros. v. State, 16 Ala.App. 526, 79 So. 625, 628. Justice Brown, now of the Supreme Court, but then a member of this court, set out the acts pertaining to the boundary line between these two counties. We refer those particularly interested in those acts to the above opinion, but in the interest of brevity we will merely quote the conclusion reached by Judge Brown as to the location of this line, which was as follows: "In view of the acts of the Legislature above adverted to, and other matters of which the court must take judicial knowledge, there is such uncertainty as to the exact location of the boundary line between these two counties as to render extraneous evidence admissible in determining the questions presented by the record."

■ Evidence of the State tended with reasonable certainty to establish the place of this alleged crime, and further to show that this locus was 860 feet from the line as established by the county engineer by the methods set forth in his testimony. In view of the uncertain location of the county line in question, we are unwilling, and we think unauthorized, in this case, to take judicial knowledge of its exact location. This being so the location of Section, 26, Township 12, south of Range 10, east, cannot be looked to as a determining ·factor in locating this county line.

■■ It is the clear doctrine that expert testimony is not necessary to prove the location of a county boundary line for the purpose of venue. The line may be proved, for such purpose, by general reputation. Jackson v. State, 27 Ala.App. 468, 174 So. 540. Part of Sheriff Garrett's testimony tended to show the location of the line in this case by such proof.

In our opinion the lower court therefore properly submitted to the jury the question of venue in this case, which point was raised by counsel in the trial below in various ways.

■ The judgment entered in this cause shows that the venire served upon this appellant from which to select a jury consisted of 75 regular jurors regularly drawn for jury duty the first week of the term of the court below, and 25 special jurors properly drawn, making a venire of 100 jurors.

The appellant moved to quash the venire, on the grounds that four of the regular jurors, whose names appear on the copy of the venire served on the appellant, had not been summoned for jury duty by the Sheriff.

A hearing was had on this motion. Sheriff Garrett testified that four of the regular jurors, whose names appear on the panel served on the appellant had not been served, though this fact was not shown on the copy served on appellant; Mr. Garrett further testified that he had made diligent effort to serve these four jurors, but they could not be located in Cherokee County.

At the conclusion of this hearing the court overruled appellant's motion to quash the indictment.

It is clear that under our existing statutes and decisions that no error attached to the court's action in denying appellant's motion to quash the venire in this case on the grounds asserted. Irwin v. State, 220 Ala. 160, 124 So. 410; Evans v. State, 209 Ala. 563, 96 So. 923; Largin v. State, 20 Ala. App. 550, 104 So. 50; Sections 63 and 67, Title 30, Code of Alabama 1940.

■ On the day this case was called for trial, and after the jurors had been sworn, the court excused some eight jurors at their respective requests, for reasons made and stated in the presence of appellant and counsel. In this respect the record shows the following, which was done in substantially the same form as to each one of the jurors excused, except as to the grounds asserted: "Mr. Reed: We object to the juror W. L. Little, County Supervisor of transportation and equipment and buses for the schools, being excused on that business excuse."

Of the other jurors excused, four asserted personal illness, or illness in their family; one asserted his foreman was ill and he had to be at the job; one was tax consultant and director of three corporations, and had scheduled meetings in Montgomery for Tuesday and Wednesday of the week of the trial; one juror was over 65 years of age; one asserted he had moved out of this State.

Section 5, Title 30, Code of Alabama 1940, provides that the court may excuse any person summoned as a juror if he is disqualified or exempt, *or for any other reasonable or proper cause, to be determined by the court.* (Italics ours).

The requests by the jurors to be excused, and the grounds for such requests, were made in the presence of the accused and his counsel, on the day this case was called for trial. Nothing in the record tends to show that the reasons offered by the jurors in support of their requests to be excused were not bona fide as stated. This case is therefore not within the doctrine of the recent cases of Draper v. State, 250 Ala. 679, 36 So.2d 73 and Hall v. State, 250 Ala. 681, 36 So.2d 74.

There is no basis for our questioning the action of the trial judge in excusing these jurors, made in exercising the broad discretion granted him in determining what is a reasonable and proper cause for excusing jurors. We find no basis of error in the action of the trial court in this premise.

The record reflects that several objections were interposed to statements of the Solicitor in his argument to the jury. In our opinion only one of these objections warrants discussion, and in this connection the record shows the following:

"Mr Reed: We object to the Solicitor arguing, 'They only bring one witness on a particular point out of a city of eight or ten thousand people.' That is arguing on the defendant not bringing certain evidence in court, and it is improper argument to this jury. We move the Court instruct the jury that is not proper argument before this jury.

"The Court: Overruled.

"Mr Reed: We except."

■ The rule now prevailing is that error is not presumed on review, even in criminal cases, the burden resting on the appellant to establish error. Garrett v. State, 248 Ala. 612, 29 So.2d 8. All doubts arising from the face of the record must be construed against the exceptor, the presumption being favorable to the rulings of the lower court in the absence of a contrary showing. Clayton v. State, 32 Ala.App. 124, 23 So.2d 396, certiorari denied 247 Ala. 194, 23 So.2d 397, certiorari denied 327 U.S. 783, 66 S.Ct. 681, 90 L.Ed. 1010. Further, it is recognized that in regulating arguments to the jury the trial court must exercise due control, and prevent the introduction of prejudicial matters; and in doing this much must be left to the judgment of the trial court, with the usual presumptions in favor of the rulings made in the exercise of such control. Wilson v. State, 232 Ala. 50, 166 So. 716.

■ We do not know, from that portion of the Solicitor's argument set out in the objection, what witness or what testimony is referred to. The witness may have testified to immaterial matters, or to undisputed matters. Certainly, to read error into the statement we would have to resort to speculation and surmise. The presumptions in favor of the trial court's ruling in the premise deny resort to such procedure.

The requested written charges refused appellant were refused without error, since they were either covered by the oral charge of the court, or other charges given at appellant's request, or were abstract, or invasive of the province of the jury, or faulty statements of the principles of law involved.

The motion for a new trial was submitted to the court below on the same testimony offered at the main trial. Several of the grounds asserted in this motion pertain to matters not appearing in the record. As to these grounds, no additional evidence being offered in support of them, there is no basis for questioning the court's conclusions thereon. As to the other grounds asserted, that is those involving the testimony submitted on the main trial, we find no reason for disturbing the trial court's conclusions thereon as evidenced by his denial of the motion for a new trial.

While other rulings by the court below are asserted and argued in appellant's brief, it is our conclusion that these rulings are clearly free from error probably injurious to appellant's substantial rights, and because they involve often discussed and well settled doctrines, do not invite discussion in this opinion.

Affirmed.

### On Rehearing.

In his application for rehearing appellant's counsel asserts that our statement that "The appellant moved to quash the venire, on the grounds that four of the regular jurors, whose names appear on the copy of the venire served on the appellant, had not been summoned for jury duty by the Sheriff", does not correctly reflect the motion.

The motion to quash was based on four grounds; the first being as follows: "1. That for the venire that was served upon the defendant Clyde Nolen is not a venire as required by law, because the copy served upon him was not a true venire to try this case because this venire contained the name of Paul Davis as a regular juror, and Paul Davis was not summoned."

The remaining three grounds are substantially identical with the first ground, except that a different regular juror is named in each respective ground.

We think our statement as to the motion was correct. Counsel insists however that the full verbiage of the motion brings it squarely within the doctrine of Carwile v. State, 148 Ala. 576, 39 So. 220, and that error therefore resulted in denial of the motion to quash.

We do not think there is merit in appellant's contention. There was not shown to have been an error or irregularity in any order of the court pertaining to the venire, or the manner of drawing it. The venire was therefore lawful in every respect. The Sheriff was unable to summon four of the regular jurors, because they could not be found in Cherokee County, and such nonservice was not shown on the copy of the special venire served on the defendant. Section 67, Title 30, Code of Alabama 1940, specifically provides that if the Sheriff fails to summon any of the jurors drawn such defect shall not be sufficient to quash the venire.

We might also note that the Carwile case relied on by appellant's counsel was decided on the basis of the statutes at that time in force. That the force and effect of these statutes has been altered by subsequent enactments is clearly pointed out in Irwin v. State, supra.

The record shows that during the cross examination of the prosecutrix the following occurred:

"Q. When it was first set, the Grand Jury in Cherokee County, you did not attend?

"Mr. Talley: We object.

"The Court: Sustained.

"Mr. Reed: We except.

"Q. The first time you ever called yourself Lola Gilmore so far as anybody over in this county knew was the 16 day of September the second day the Grand Jury met here to consider this case. A. Yes."

Counsel argues that the action of the court in sustaining the objection as above set out should cause a reversal of this cause.

There was no offer of expected proof stated by counsel for the court's informa-

tion, nor was there any proof that the prosecutrix had been summoned before the Grand Jury on the first day. It is shown by part of the above extract from the record that the prosecutrix was before the Grand Jury on the second day of its meeting. Certainly she appeared as an unhesitant witness in the trial below. The bare question as framed, and to which objection was sustained, does not contain any inference of reluctance on the part of the prosecutrix to appear as a witness before the grand jury. Certainly is this true in the absence of any showing that she was summoned to appear on the first day of the meeting of that body. No error therefore resulted from the court's action in this premise.

 It is further urged by counsel that the lower court erred in refusing to permit the prosecutrix to be cross examined relative to her spending two or more nights "away from her home with her paramour, James Ward, immediately following the alleged offense, registering and holding herself out as his wife."

The prosecutrix testified that the night of the alleged offense she spent in the Dixie Hotel, in Piedmont; that there was only one bed in the room, and that James Ward had sat up in the room looking after her. The record then shows the following:

"Q. The next morning you went to another hotel in Piedmont; you moved out of there? A. I left there.

"Mr. Talley: We object.

"The Court: You are carrying it too far.

"Mr. Reed: I was fixing to ask her another question.

"Q. At this other hotel you held yourself out as being the wife of James A. Ward? A. I did not go to another hotel."

Pretermitting any consideration as to the propriety of the court's statement that counsel was carrying the examination too far, no exception was reserved to the court's statement, and other than as shown above no further effort was made to develop this line of testimony. We find nothing in the above incident warranting or permitting our review.

Application denied.