(86 South. 111)

STEPHENS v. STATE.    (8 Div. 737.)

(Court of Appeals of Alabama.    June 29, 1920.)

1. WITNESSES &modsw;35—HIGH BLOOD PRESSURE DOES NOT DISQUALIFY.

The competency vel non of a witness is for the discretion of the trial judge seeing and hearing the witness, and the fact that the witness was suffering from high blood pressure and was dizzy would not render him incompetent.

2. HOMICIDE &modsw;338(4) — IMMATERIAL EVIDENCE HELD PREJUDICIAL AND NOT PROPERLY WITHDRAWN.

In a prosecution for murder, committed while defendant was on duty as town marshal, immaterial testimony tending to connect the defendant with illicit relations with a married woman living near the light plant he was guarding when the homicide took place held highly prejudicial, and not withdrawn and cured by the court's language, which was too general and indefinite, particularly since it was intermingled with material testimony.

3. HOMICIDE &modsw;188(3)—THAT WITNESS KNEW DECEASED CARRIED A PISTOL NOT ADMISSIBLE, WHERE SELF-DEFENSE NOT SHOWN.

In a prosecution for murder, it was not error for the court to refuse to permit witness to testify that he knew deceased to carry a pistol, where there was no evidence of self-defense at the time such evidence was offered.

4. WITNESSES &modsw;374(1)—WHERE ILL WILL OF WITNESS TOWARD DEFENDANT ALREADY SHOWN, FURTHER EVIDENCE THEREOF IS UNNECESSARY.

In a prosecution for murder, where defendant was a town marshal and it had been shown that witness carried ill will toward defendant for having had witness tied to a stake at time he was working as a convict for the town, it was proper to exclude evidence that such act was done by the mayor's order, since such evidence could add nothing to that received.

5. HOMICIDE &modsw;163(2)—BAD CHARACTER OF DECEASED MUST BE SHOWN BY GENERAL REPUTATION.

In prosecution for homicide, defendant's evidence to prove deceased's bad character by specific acts was properly excluded, since character must be shown by general reputation in one's community, and not by specific delinquent acts.

6. CRIMINAL LAW &modsw;829(1) — INSTRUCTION COVERED PROPERLY REFUSED.

In a prosecution for murder, the refusal to give requested instruction on matters sufficiently covered by instructions given was not error.

Appeal from Circuit Court, Marshall County; W. W. Haralson, Judge.

Joe Stephens was indicted on a charge of murder in the first degree, and on the trial was convicted of manslaughter in the first degree, and from the judgment he appeals. Reversed and remanded.

John A. Lusk & Son, of Guntersville, for appellant.

The language of the court in excluding the admittedly incompetent testimony did not remove the prejudice of its admission. 15 Ala. App. 454, 73 South. 766. The court erred in admitting evidence as to Davison's wife and Pheney, and as to what happened. 147 Ala. 50, 41 South. 727; 137 Ala. 44, 34 South. 680; 30 Ala. 433; 112 Ala. 1, 21 South. 214. Counsel discuss refused charges, but in view of their treatment in the opinion it is not deemed necessary to here set them out.

J. Q. Smith, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

The competency of a witness is a matter for the court. 172 Ala. 344, 54 South. 629. Assignments 4 and 5, relating to the drawing of extra jurors, was decided adversely to appellant's contention in the case of Al. Henry Vaughn v. State, ante, p. 383, 84 South. 879. The court sufficiently excluded the immaterial evidence. 13 Mitchie's Ala. Dig. 201; 187 Ala. 499, 65 South. 528, Ann. Cas. 1916E, 565. Character may only be shown by general repute. 76 Ala. 8; 161 Ala. 25, 49 South. 824.

SAMFORD, J. The exceptions indicated by assignments of error 1, 2, and 3 are not insisted upon, the points therein raised being settled by the following cases: Evans v. State, 82 South. 625;[1] Harris v. State (Sup.) 82 South. 450;[2] Chambers v. State (June 10, 1919) 84 South. 638.[3] The exceptions indicated by assignments of error 4 and 5 have been settled adversely to appellant's contention in the case of Al Henry Vaughn v. State, ante, p. 383, 84 South. 879.

[1] There was no error in the action of the court in permitting the state to examine as a witness Albert Shaw because he was suffering from high blood pressure. The determination of the competency vel non of a witness to testify is for the court. McKinstry v. City of Tuscaloosa, 172 Ala. 344, 54 South. 629. The fact that the witness was dizzy would not render him incompetent. These questions must of necessity be left largely to the discretion of the trial judge, who is in a better position to pass upon them than this court.

[2] The defendant was at the time of this homicide the marshal of the town of Albertville, and was on duty as such. This nation

---

had just declared war on Germany, and defendant had been given instructions by his superiors to watch closely the water supply and electrical light plant of the town, and while on duty at the electric light plant he killed the deceased, Will Stallings. The state contended it was without provocation, and was therefore murder. The defendant claimed that the deceased was a dangerous, bloodthirsty, turbulent, and lawless man, that he had enmity against the defendant, and many times had said he would kill defendant, which threats were communicated, and that on this night, in line with his duty and instructions, defendant had ordered deceased away from the light plant; that, instead of going, deceased resented the order, and made demonstration as if to draw a pistol, and that, acting on appearances, coupled with the knowledge he had in regard to the custom of deceased as to going armed, his general dangerous character and his expressed ill will and threats against defendant, defendant shot him in self-defense. These were the issues, but throughout the trial, long drawn out, as indicated by the record, there was permitted much illegal, irrelevant, and immaterial testimony tending to connect the defendant with illicit relations with a married woman living near the light plant where the homicide took place. This testimony permeated the entire trial for the first day, constituted a large part of the state's testimony, and this testimony was allowed to rest with the jury overnight, when on the convening of court on the next day the court said:

"Gentlemen of the jury, I have come to the conclusion that the testimony here in reference to Mrs. Davidson or some woman, with reference to Mr. Stephens' connection with her, is incompetent, and therefore I exclude all that from you. That testimony is excluded, and you will not consider it. For instance, the conversation on Wednesday night with reference to that matter before the killing and going down to Attalla on the train, and the association of the defendant with this man who was here, all that matter is excluded from you, and it will have no impression on you. Forget it."

And further on, the court again said:

"I exclude this matter from you: That one night they saw some one pass up there; the conversation Stallings had one night after supper when they met the train up there; that has nothing to do with this case, and don't consider it."

And further on the court said:

"Gentlemen of the jury, don't consider any of that testimony about anybody being at the oil mill with a long coat on or a slouched hat. That has nothing to do with this case."

The testimony was admittedly illegal, irrelevant, and incompetent, and its only tendency was to raise in the minds of the jury a suspicion that the defendant was having illicit relations with another man's wife, or that he was "stalking" deceased for some unlawful purpose, and was therefore, highly prejudicial to the rights of the defendant on his trial. We doubt if under the facts in this case, the line of inquiry being given the prominence and scope and emphasis it was, if the court could have so withdrawn it from the jury as not to have injured the defendant. At any rate, the language used by the court in excluding the illegal testimony is too general and indefinite to cure the error in this case. "Necessarily, to a large extent (as has * * * been held by the courts), each case presenting this question must be decided upon the merits of the particular case under review, rather than on any general rule." Wills v. State, 15 Ala. App. 454, 73 South. 766. It may be said, however, in line with the Wills Case, supra, that:

"It is a matter of general, as well as judicial, knowledge that it is very difficult to eradicate from the minds of a jury the injurious impressions created by the admission of illegal testimony."

Certainly is this so where, as in this case, the tendencies of the testimony on an immaterial issue was so interwoven with the testimony for the state as to be hard of separation and tending to hold up to the jury, during the trial, the defendant as being a man who, though charged with the duty of preserving the persons and property of the town, was interfering with another man's home.

It was held in Watson v. Adams, 187 Ala. 490, 499, 65 South. 528, 530 (Ann. Cas. 1916E, 565), to be "settled in this state that the admission of illegal evidence, which is subsequently excluded and the jury instructed to disregard such evidence, cures the error, and vitiates the exception reserved to its admission," quoting Smith v. State, 107 Ala. 144, 18 South. 306, and W. U. Tel. Co. v. Rowell, 166 Ala. 651, 51 South. 880, but it was also held in that case that the burden was on the party inducing the admission of illegal matter as evidence in a cause to wholly neutralize the prejudicial effect wrought by the admission. Watson v. Adams, supra; Green v. State, 96 Ala. 32, 11 South. 478; Carlisle v. Hunley, 15 Ala. 625; Jackson v. State, 94 Ala. 89, 10 South. 509; Jordan v. State, 79 Ala. 12. The admitted errors of the court were not cured.

[3] It was not error for the court to refuse to permit the witness Pheney to testify that he knew deceased to carry a pistol. There was no evidence of self-defense at the time this evidence was offered, and subsequently this proof was admitted.

[4] The ill will of Grady Luther towards defendant had already been shown by showing that defendant tied him to a stake at the time Luther was working as a convict for the

town, and the fact that it was done by order of the mayor could add nothing to it.

[5] Efforts on the part of defendant to prove deceased's bad character by specific acts were properly overruled. Character must be shown by general repute in one's community, and not by specific acts of delinquency. Jones Case, 76 Ala. 8; Noel's Case, 161 Ala. 25, 49 South. 824; Davenport v. State, 15 Ala. App. 325, 73 South. 210.

The refusal of charges 23, 24, 25, 27, 31, 34, 37, and 41 is correctly conceded to be without error.

[6] Charges 26, 30, and 38 are all definitions of reasonable doubt or burden of proof, and were fully covered by given charges 2, 3, 4, 5, 8, 9, 18, and 19, and the oral charge of the court on that subject.

Charges 29, 32, 35, 36, and 40 relate to self-defense, and are covered by given charges 1, 6, 7, 14, 21, 22, and the oral charge of the court.

Charge 33 was covered by given charges 10, 11, 12, and the charge of the court. Charge 28 is bad, and properly refused. De Scrippo v. State, 8 Ala. App. 85, 62 South. 1004.

For the error pointed out, the judgment of the trial court is reversed, and the cause is remanded.

Reversed and remanded.