(139 So. 110)

## SUTHERLAND v. STATE.

6 Div. 58.

Court of Appeals of Alabama.

Jan. 12, 1932.

Gordon Davis, of Tuscaloosa, for appellant.

574

Thos. E. Knight, Jr., Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

SAMFORD, J.

The defendant, Tom Burchfield, Burt Dunn, and Ben Roberts, the deceased, were at a fishing camp on the Warrior river in January, 1931. They all spent the night together, and the next morning Burchfield and Dunn went off hunting, leaving Roberts and defendant at camp with the understanding that they too were going to hunt. When Burchfield and Dunn returned to camp about 11 o'clock, they found no one there, but in a short time defendant came up with Roberts' gun in his hand. When asked where Roberts was, defendant replied he didn't know, and then: "The defendant raised up and looked down the river and says, come on I will show him to you." About thirty-eight feet from the house they found the body of Roberts, dead, with a gunshot in his body. The ground around the body was: "All tramped up." Burchfield testified that defendant admitted killing Roberts and this the defendant denied. On finding the body defendant went to Lock 16 and called an officer, he then went and got his father, and they both went back to the camp where the officer was, and aided the officer in disposing of the body and handling it. While Burchfield and Dunn both remained in the camp during the investigation being made by Sheriff McKinley neither of them aided in handling the body. Both, however, told the sheriff that defendant had admitted shooting Roberts. In making the investigation the sheriff found a spot of blood on the coat sleeve of defendant and some blood at the place where the body of Roberts lay. He took the bloody sand, put it in a can, and sent it with the coat to the State Laboratory at Montgomery for testing. On the trial Miss Mayfield, an attaché of the State Laboratory, without qualifying as an expert, testified that the spot on the coat and the blood in the can was human blood.

■ If objection had been made to the testimony of Miss Mayfield, her evidence would have been excluded. She was not qualified as an expert, without which she would not be allowed to give her opinion upon the question of whether the blood was human or not. Clemons v. State, 167 Ala. 20, 52 So. 467.

■ Waiving for the time being the insistence of appellant's counsel that the coat was not properly identified as having been worn by defendant at the time of the homicide and the blood as having been that of the dead man, these two articles—the coat with the blood spot and the can of blood— before such objects may be legally admitted in evidence it must be made to appear that they have some tendency to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, to corroborate or disprove some other evidence offered or to be offered. They must have some tendency to shed light upon some material inquiry. It is the duty of the trial court to confine evidence to points in issue in order that the attention of the jury may not be distracted from such matters, by the exhibition of ghastly objects which appeal to the senses and add nothing to the proof. As was said in L. & N. R. R. v. Pearson, 97 Ala. 211, 12 So. 176, 180, "Sympathy or indignation, once aroused, in the average juror, readily becomes enlisted to the prejudice of the person accused as the author of the injury." The coat and the can of blood added nothing to the proof already made and could have had but one effect, and that was to arouse the senses of the jurors against this defendant. The articles should have been excluded. Boyette v. State, 215 Ala. 472, 110 So. 812; Crenshaw v. State, 207 Ala. 438, 93 So. 465; Rollings v. State, 160 Ala. 82, 49 So. 329. In Hyche v. State, 22 Ala. App. 176, 113 So. 644, and Patterson v. State, 23 Ala. App. 428, 126 So. 420, the decisions on this point have been limited and clarified so that when the articles offered are relevant and aid in the proof being made they are admissible, but not otherwise.

Adverting again to the contention that the coat and blood were not sufficiently connected so as to make them admissible, we have to say that only by inference is this so. There is no direct evidence that defendant

had on the coat before the homicide and none that the blood was that of deceased. However, there were some facts from which such inferences might be drawn.

■ The conviction of this defendant rests upon the testimony of Burt Dunn and Tom Burchfield, one of whom is an ex-convict, and both are shown without dispute to be men of bad character and unworthy of belief on oath. Both of these men had an equal opportunity to have killed deceased and in fact, according to their own statements, were at the camp and within thirty-eight feet of the dead body for an hour before defendant returned to camp, and their testimony as to what occurred when defendant did return is identical as to detail. The defendant proved a good character and denied any connection with the crime, saying that when he returned to camp the deceased was lying near the camp dead. No motive is shown for the crime and but for the testimony of Dunn and Burchfield rests in inferences to be drawn from the facts, many of which could be made to apply with equal force to some other than the defendant as the guilty agent. While the facts are in dispute, we think that from all the facts and circumstances evoked on the trial the defendant should have a new trial.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.