9 So.2d 146

## MOORE v. STATE.
### 6 Div. 939.

Court of Appeals of Alabama.
June 30, 1942.

Gerald & Gerald, of Clanton, for appellant.

Thos. S: Lawson, Atty. Gen., and Wm. N. McQueen, Asst. Atty. Gen., for the State.

554

SIMPSON, Judge.

The defendant appeals from a conviction of rape and a sentence of twenty years imprisonment. He assigns as error the various rulings pending trial as well as the overruling of a motion for a new trial.

■ The first insistence of error is that venue was established by hearsay evidence. The prosecutrix testified that, after the alleged attack, she and defendant used a towel (given her by defendant) and that she threw it out of the car before they left the scene for the return trip home.

Several days later, she and Detective Howell found the towel at this place which, according to Howell, was about half way between Mohler's Hot House and Hollis' Dairy. Witness McAdory then testified that these two points and the intervening territory between them (and where he found the towel) were all within the jurisdiction of the Circuit Court of Jefferson County, Alabama, *Bessemer Division.* This competently showed the proper venue as in the Bessemer cut-off.

■ Venue, as any other fact, may be established by either direct or circumstantial evidence, and the proof is sufficient if, from the facts and circumstances adduced, it can be reasonably inferred. Goodwin v. State, 27 Ala.App. 493, 175 So. 415; Smith v. State, 21 Ala.App. 497, 109 So. 530; McGrew v. State, 21 Ala.App. 266, 107 So. 328; Palmer v. State, 168 Ala. 124, 53 So. 283; Tinney v. State, 111 Ala. 74, 20 So. 597.

■ The proof of venue was not rendered hearsay because the prosecutrix said she threw out the towel at the scene. The towel merely identified the place of the alleged crime, which was proved to be between the two aforementioned points and in the Bessemer Division. Her testimony as to the towel was but a link in the chain of proof which, added to that of the other two witnesses, established the venue. 23 C.J.S., Criminal Law, § 914, p. 169; Hurston v. State, 235 Ala. 213, 178 So. 223.

We do not think the cases—notably. Mayhall v. State, 22 Ala.App. 223, 114 So. 361, and cases there listed—holding as in-

admissible purely hearsay evidence to establish venue, have appropriate application here. Nor do the cases cited by appellant.

■ Coitus was not denied. As to this, the vital issue was whether or not the prosecutrix consented. She contended that she was forced to yield against her will, while he denied it, claiming that she consented. Nor was the manner of performance in dispute between them, save and except that she claims he overcame her by force. The front seat of a coupe automobile was the locus in quo and it does not appear that her underclothing was removed, damaged or torn—quoting her testimony: "He pulled my dress up and pulled my pants to the side. By 'pants' I mean silk step-ins. I did not have bloomers on, but step-ins, and they had a little elastic around the top of them." Thus it would seem that the act was accomplished with her clothing intact.

As to the conflicting evidence bearing upon the issue of consent; there was strong corroboration of the prosecutrix, including the testimony of her doctor, who examined her soon after her return home and who testified to her previous virginity. Yet, for the defendant, it can be said that this contention of non-consent was strongly rebutted by certain other facts and circumstances, such as that, though there was no claim that she yielded through fear or duress,—actual force being her claim—she bore no bruises, except a knot (no wound) on her head, a bruise on one thigh and "rubs" on her arms (there were no abrasions of the skin); she was not shown to have been disheveled or otherwise distraught upon her arrival home; her clothing was apparently intact and untorn (or there is no evidence to the contrary); nor did the defendant, who was arrested the same day (though she says he was endeavoring to kiss her during the proceeding), bear evidence of any hurts, bruises or scratches on his face to indicate her fierce resistance or a struggle between them, such as is usually expected in such a situation. All of which tends to support his defense, especially in view of the restricted and incommodious place in which the transaction admittedly took place.

The foregoing comments are without prejudice to the respective contentions of either party but in order to illustrate the striking conflict of evidence and the corroborating tendencies relatively bearing upon the testimony of each. Furthermore,

it demonstrates that this issue was peculiarly for the jury, and that the defendant's motion to exclude the State's evidence and his request for a directed verdict were each without merit.

But, after full and careful study, each judge having read the whole evidence, and the court having given due consideration to the entire case, we are of the conclusion that we would be recreant to our solemn duty were we to allow the conviction to stand, thereby holding that the trial was without prejudicial error to the defendant. And we have concluded this, meanwhile mindful of the care with which the learned trial judge sought to preserve the case from error.

■ Even the guilty must be accorded a fair trial, free of prejudice and improper appeal to the jury. This right inheres for him as well as to the innocent in every criminal trial.

We are greatly impressed that, due to certain improper interrogation by the prosecution of the defendant and his witnesses, the unauthorized argument of State's special counsel to the jury, and certain conduct of State's counsel during the course of the trial, hereafter referred to, there was created such an atmosphere of prejudice against the defendant as was ineradicable and necessitates our ordering another trial, even though instructions to mend the matter were given to the jury by the able and astute trial judge.

The emphatic observation in our case of Pointer v. State, 24 Ala.App. 23, 27, 129 So. 787, 790, is apposite: "The practice of injecting illegal considerations into a trial through the medium of improper arguments, statements, side remarks, and intimations calculated to influence the jury, has many times been condemned by appellate courts of this state. No holding can be too emphatic, or too solemn, that such invasions of the rights of parties in civil and criminal cases cannot be tolerated by courts charged with the duty of securing to all litigants trials which are lawful, impartial, and fair, both in form and in substance. * * * The invasion of the rights of the litigant is just as great and just as injurious where side remarks or illegal arguments convey to the jury ineradicable information of a damaging nature. When a trial attorney attempts to lay illegal matter before a jury, he must know that he is presenting to their consciousness something which it is always

difficult, and often impossible, to eradicate from their minds; and such conduct cannot have the approval of this court."

■ And from our Supreme Court we have the following concise observation: "It is now the well-established rule that, if improper argument of counsel is of such a character as to fall within that class of argumentative statements which are grossly improper and highly prejudicial, and whose evil influence and effect cannot be eradicated from the minds of the jury by any admonition from the trial judge, then a motion for new trial is due to be granted. Standridge v. Martin, supra [203 Ala. 486, 84 So. 266]; Birmingham Ry., Lt. & P. Co. v. Drennen, supra [175 Ala. 338, 57 So. 876, Ann.Cas.1914C, 1037]; F. W. Woolworth [Co.] v. Sallie Erickson, [221 Ala. 5], 127 So. 534." Birmingham Baptist Hospital v. Blackwell, 221 Ala. 225, 230, 128 So. 389, 393.

■ It is equally well settled that "to willfully, knowingly, and insistently endeavor to inject into a case matters wholly illegal and inadmissible, in order to fasten a conviction upon a person charged and on trial for a criminal offense, should not be indulged and cannot be approved or condoned." Whitfield v. State, 21 Ala.App. 490, 491, 109 So. 524, 525. Also, Moore v. State, 26 Ala.App. 607, 164 So. 761.

A cursory review of the case reveals a studious effort—or, if not, such was its natural tendency—upon the part of the State to weave a web of suspicion of guilt about the defendant by innuendoes and questions to certain witnesses, intimating that the defendant was what associate counsel for the State finally described him to be in argument to the jury: "This sex fiend, *that wants to put his hands on every woman he sees and have intercourse with her.*" (Exception was duly reserved to the Court's action in refusing to exclude this argument.) If he were such a man, then well to say it, but there should be some proof or inference from facts adduced to justify the accusation. Such derogation of a defendant should not be perpetrated unless based upon competent evidence or justified by legitimate inference therefrom.

As illustrative of this tendency on the part of the State to create prejudice against him, certain questions were propounded to the defendant and his witnesses which left the impression that he had been previously tried and convicted (and if not guilty thereof the whole interrogation was improper)

556

of a similar sex crime. Such fact, if duly proved, has been held to be relevant under certain circumstances. Wilkins v. State, 29 Ala.App. 349, 197 So. 75; Snead v. State, Ala.Sup., 8 So.2d 269. And we, upon first reading the record, were brought under the spell of this same impression, induced by the manner of the cross examination by State's learned counsel.

The following, propounded by the State, exemplify:

"Q. Did you hear about him (defendant) being arrested in Chilton County for raping another woman and was tried by a jury?"

"Q. You still say before you took this witness stand you hadn't heard about him being tried for rape in Chilton County and defended by this same lawyer?

"(Defense counsel) Now, that is not true. If you are going to make a speech to the jury,—just withdraw that.

"(State's counsel) That is my understanding, you represented him on the former case.

"(Defense counsel) You misunderstand a lot of things. That is not true,—in Chilton County, and you don't know that to be a fact.

"(State's counsel) Well, let's see whether it was or not. I got a statement here; I have got his sworn testimony, that you were his lawyer.

"(Defense counsel) I object to him reading some statement. I have told him that I have never represented this man in Chilton County, in my life, for anything. I defy·him to prove that I did.

"(State's counsel) Q. Have you heard also that on this same charge of assault with intent to ravish in Chilton County, that he skipped his bond and went to Detroit, and was later brought back here and tried for that offense; had you heard that before you took the witness stand?"

The defendant having been thus prejudiced by the insinuation of having been guilty previously of such a crime, it developed toward the close of the trial that, although tried for an assault to rape, he had been exonerated by an acquittal—and this in Jefferson County—and that the paper referred to by the prosecution in the colloquy above contained this specific information. Manifestly, the fact of his former acquittal must have been known to counsel ·so we see no purpose in such interrogation save to prejudice the defendant wrongfully.

Pursuing the attempt to further degrade the accused before the jury and to influence them to think that perhaps his former acquittal was abortive, counsel prosecuting for the State addressed the defendant during cross examination in this fashion (referring to the acquittal in the previous assault case): "Q. You fooled that jury, didn't you, Mr. Moore?"

Apt here is the quotation from Alabama Iron & Fuel Co. v. Benenante, 11 Ala.App. 644, 656, 66 So. 942, 945: "Statements of fact not proven and comments thereon are outside of the cause; they stand legally irrelevant to the matter. in dispute and are therefore not pertinent. If not pertinent, they are not within the privilege of counsel."

The following question to one of his witnesses upon cross examination also tended to help weave the web of prejudice against the defendant: "Q. How many different women have you heard of him living with in Birmingham, and he having a living wife in Chilton County, who teaches school down there?" (Of course, whether he had a living wife in Chilton County would be irrelevant upon the main issue—Barnett v. State, 16 Ala.App. 539, 541, 79 So. 675—though, if *reputedly* there were adulterous relations with other women, *proper* and *pertinent* interrogation of his character witnesses may be undertaken as bearing upon his reputation.)

Nevertheless, by questions seeking to elicit that which State's counsel knew were not facts and could not be proven, the impression of former sex crimes and practices by the defendant had undoubtedly been established in the minds of the jury long before it was developed that such was not the case (or at least it was not proven to be so).

And when sympathy, prejudice or indignation has been once engendered in the average juror the possibilities of eradication are slight. Especially so, when, to close this irrelevant issue, the opposing counsel intimates that the former acquittal of the defendant on a previous sex charge resulted by his (defendant's) own chicanery —towit: by "fooling" the jury.

Then, to culminate the build-up of his alleged criminal sexualism and as crowning prejudice against him, the State's special

counsel leveled the above-quoted accusation against him in argument to the jury, that he was a sex fiend, etc., the *italicized portion* of which quotation was wholly unsupported by facts and unwarranted as a legitimate inference.

While it is cautious to observe that perhaps a single infraction as those hereinabove referred to would not so impress us, we are strongly convinced that the total of what was said by zealous and skillful counsel, who prosecuted for the State, rendered it impossible to so eradicate from the minds of the jury the injurious impression thus created as to rescue the case from prejudicial error.

There are many analogous cases. In addition to those already cited, some others are: Kennamer v. State, 28 Ala.App. 317, 183 So. 892; Capps v. State, 29 Ala.App. 192, 194 So. 689; Stephens v. State, 17 Ala. App. 548, 86 So. 111, 112.

In so concluding, we recognize fully the favorable presumption to be accorded the rulings at nisi prius and the caution to be observed in overturning those rulings. But we have a duty to perform. We think error prevailed as a result of the questions, comments and argument aforesaid. We think the defendant should have another trial and it is so ordered.

Lest those most interested in the prosecution should view too critically this court's action in seeking to preserve for a defendant, whether guilty or not, his constitutional right to an unprejudiced trial, we might enlist for our favor the statement in the Alabama Iron & Fuel Co. case, supra: "Too often are illegal questions asked of witnesses and improper remarks made by counsel in the presence of the jury with the knowledge or the belief that, although they may be excluded, they will nevertheless abide or linger in the minds of the jury and probably produce the desired result. If it be said that reversal of the judgment in such cases may work a hardship upon appellee [the State here], it results from the conduct of him who stands as his sponsor in the trial. We know of no more effective way of repressing the wrong and maintaining the integrity of the profession in the administration of the law."

In view of another trial, it is observed that the probative value of the "step-ins" in evidence is not made clear by the record. Unless they were torn, damaged, or bore evidence of some kind to corroborate the contention of the prosecutrix or to disprove the claim of the defendant, or unless they shed light upon some controverted issue, or unless they had a tendency to illustrate, in some way, what happened, they were inadmissible. Gilbert v. State, 28 Ala.App. 206, 180 So. 306; Mickle v. State, 25 Ala.App. 152, 142 So. 120; Sutherland v. State, 24 Ala.App. 573, 139 So. 110.

"Such articles should never be offered or received in evidence unless they 'have some tendency to shed some light upon some material inquiry.' Rollings v. State, 160 Ala. 82, 86, 49 So. 329; Pearson's case, [Louisville & N. R. Co. v. Pearson], 97 Ala. [211], 219, 12 So. 176; Alabama G. S. R. Co. v. Bell, 200 Ala. 562, 76 So. 920." Husch v. State, 211 Ala. 274, 276, 100 So. 321, 322.

We mention this because unless the condition of this article of clothing was such that it shed light upon some material inquiry in the case, the introduction thereof in evidence "was but the presentation of an unsightly spectacle calculated to prejudice the jury." Boyette v. State, 215 Ala. 472, 473, 110 So. 812.

See also Alabama G. S. R. Co. v. Bell, 200 Ala. 562, 565, 76 So. 920; Rollings v. State, 160 Ala. 82, 49 So. 329; Louisville & N. R. Co. v. Pearson, 97 Ala. 211, 219, 12 So. 176.

The judgment is reversed and the cause remanded.

Reversed and remanded.