42 So.2d 525

## LEVERT v. STATE.
### 6 Div. 496.

Court of Appeals of Alabama.
June 29, 1948.

Rehearing Granted Aug. 3, 1948.
Further Rehearing Denied Oct. 5, 1948.

Reversed after Remandment, June 21, 1949.
Rehearing Denied July 19, 1949.

Lipscomb & Brobston, of Bessemer, and
D. G. Ewing, of Birmingham, for appel-
lant.

A. A. Carmichael, Atty. Gen., and Richard S. Brooks, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

Appellant was indicted for murder in the first degree. Her jury trial resulted in a verdict of guilty of manslaughter in the first degree and a penalty of imprisonment in the State penitentiary for a term of ten years.

Appellant was the wife of deceased, having been married to him about eight years.

The state's evidence tends to show that on 31 January 1947, the appellant stabbed the deceased in the lower part of the neck with a pocket knife, from which wound the deceased died within a few minutes.

According to the testimony of state's witness, Frank Cornelius, who was a visitor in the home of appellant and deceased a short while before the stabbing, the appellant and deceased had become embroiled in an argument. The deceased had threatened to hurt appellant and she had threatened him by stating she could beat him cutting. Appellant had an open knife in the fold of her sweater at this time.

Cornelius left the house and walked a short distance away. He was engaged for about five minutes in conversation with two acquaintances when he heard the deceased say "you done cut me." He then saw appellant lead the deceased out of their back door and place him on the porch of a nearby house. Appellant then began hollering "Oh, somebody done killed my husband."

When the coroner arrived he found the deceased on the porch dead. A trail of blood ran from the porch on which deceased was lying to the kitchen of deceased's home.

Appellant told the officers that Frank Cornelius had killed her husband.

The next morning however the appellant made a voluntary written statement admitting that she had stabbed the deceased on the night in question.

Testifying in her own behalf the appellant gave testimony which if believed by the jury under the required rule tended to establish self defense.

In the indictment, which is in Code form for murder in the first degree, this appellant is designated as Joseph Levert, instead of Josephine Levert, and the deceased is designated as Epriam Levert, alias Ephron Levert.

The evidence is clear that appellant's name is Josephine Levert. However, the accused plead not guilty to the indict-

ment without interposing any appropriate objection. By such action she consented to the jurisdiction of the court below, and an alleged mistake in her given name will not, under such conditions, be considered on appeal. Benton v. State, 24 Ala.App. 441, 136 So. 428; Bryant v. State, 28 Ala. App. 363, 184 So. 288.

The deceased is referred to as Ephriam in the testimony of the witnesses. However in the written confession signed by the appellant the deceased is referred to as Ephron. Merely leaving the "h" out of Ephriam in no way tended to mislead, or leave in doubt to a person of common understanding who appellant was charged with killing. In addition, whether one name is idem sonans with another, notwithstanding a difference in the spelling of the two, is a question of fact for the jury when it arises on the evidence under a plea of the general issue, and not a matter of law for the court. Frazer v. State, 29 Ala.App. 204, 195 So. 287; Espey v. State, 31 Ala. App. 351, 17 So.2d 430; McCoy v. State, 232 Ala. 104, 166 So. 769.

Mr. T. J. McCollum, deputy coroner of Jefferson County, testified that he had been deputy coroner for about sixteen years, was a licensed embalmer, and had been an undertaker for forty years. During this time he has examined hundreds of bodies, and estimated he had examined between two and three hundred bodies where death had resulted from knife wounds.

Under this predicate it is clear that this witness was competent to express an opinion that deceased's death resulted from the wound inflicted by appellant, and was also competent to testify as to the location of arteries near or in the wound. Phillips v. State, 248 Ala. 510, 28 So.2d 542; Gunn v. State, 24 Ala.App. 494, 136 So. 870.

Over the objection of appellant the clothes worn by her on the night of the killing, which had on them stains appearing to be blood were received in evidence. Likewise, a pocket knife taken that night by the coroner from the hip pocket of the deceased. The knife did not appear to have any stains on it.

No error resulted from the admission into evidence of these articles.

Under appellant's claim of self defense these articles shed light on a material inquiry and tended to throw light on the transaction at issue. They were therefore material and relevant evidence in this cause. Moore v. State, 30 Ala.App. 552, 9 So.2d 146; Allford v. State, 31 Ala.App. 62, 12 So.2d 404; Hicks v. State, 247 Ala. 439, 25 So.2d 139.

During the examination of the witness Cornelius he testified that he had bought some whiskey from the appellant while he visited there on the night of the affray.

On motion of appellant this testimony was excluded and the court instructed the jury not to consider it.

Cornelius then testified that he and Josephine drank some liquor that night, and in connection with how much he drank the record shows the following:

"Q. How much did you drink? A. Well, I drank a dollar shot.

"Q. How much did Josephine drink?

"Mr. Ewing: We move to exclude that.

"The Court: Overruled.

"Mr. Ewing: We except."

We assume the motion to exclude "that" was aimed at the answer preceding the question "How much did Josephine drink?" The motion is unsupported by any assigned grounds. It is therefore insufficient to justify a reversal based on the ruling of the court in the premise. Ellison v. State, Ala.App., 34 So.2d 185; Walker v. Jones, Ala.Sup., 34 So.2d 614.

In view of the court's rulings and instructions to the jury in connection with Cornelius' testimony, and the abundance of evidence tending to justify the verdict of guilty rendered in this case, we are unwilling to say that the jury disregarded the court's instructions and that the verdict resulted from passion and prejudice engendered during Cornelius' examination.

The verdict rendered by the jury in this case and on which the judgment was based read as follows:

"We, the jury, find the defendant guilty of first degree manslaughter and penalty fixed at 10 years in the penitentiary. W. D. Banks, Foreman."

It is clear from the language of the above verdict that it was the intention of the jury to find the defendant guilty of manslaughter in the first degree and fix 'her punishment at imprisonment in the penitentiary for a term of ten years. It was in our opinion amply sufficient to support the judgment entered. Strict adherence to form or language in the rendition of verdicts by petit juries is not required.

There is no merit in appellant's contention that the verdict is insufficient to support the judgment entered in this case.

The evidence below presented a question of fact for the jury. The state's evidence clearly tended to support the verdict rendered. No error therefore resulted from the court's refusal of appellant's written request for the affirmative charge.

Likewise no error resulted from the court's refusal of appellant's written requested charge No. 4. This charge is misleading, confused, and not predicated on the evidence.

Other points are argued in appellant's brief. The court's rulings in connection therewith are however so palpably correct and based on principles long settled by cases in this jurisdiction that we have omitted discussion thereof.

Affirmed.

## On Rehearing.

Among the points re-argued by appellant's counsel in his brief in support of this application is the one pertaining to the designation of the deceased as "Epriam, alias Ephron Levert," whereas deceased's true name is Ephriam Levert.

As pointed out in the original opinion, the indictment designated the deceased as "Epriam, alias Ephron Levert". In the written confession signed by the defendant and received in evidence, the deceased is designated as "Ephron." Thus aside from whether "Ephriam" and "Epriam" are idem sonans, there was evidence identifying the deceased specifically by one of the names by which he was designated in the indictment. In pointing this out we in no way mean to depart from the view heretofore expressed that whether one name is idem sonans with another, notwithstanding a difference in the spelling of the two, raises a question of fact for the jury when it arises on evidence under a plea of the general issue, and is not a matter of law for the court. (See cases cited in original opinion).

It is further pointed out that nowhere is there a ruling asked or made which takes note of any variance between deceased's name in the indictment and his allegedly real name. True, the name of the deceased must be correctly stated, and a material variance is fatal. But a mere inaccuracy where the identity of the person named in the indictment with the one named in the evidence is established, is not fatal. McCoy v. State, 232 Ala. 104, 166 So. 769.

In appellant's brief in support of her application for rehearing counsel further earnestly argues that the cumulative effect of certain questions propounded by the Solicitor to State's witness Cornelius on direct examination, coupled with an improper argument by the Solicitor should cause a reversal of this cause.

As to the examination of Cornelius the record shows the following:

"Q. What was the occasion of you going to Ephraim's house that night? A. To buy me some whiskey.

"Q. And did you buy some there? A. Yes, sir.

"Q. Who did you buy it from? A. I bought it from Josephine.

"Q. Josephine Levert? A. Yes, sir.

"Mr. Ewing: We object to that, if the Court please.

"The Court: Well, you want to object to the question, Mr. Ewing.

"Mr. Ewing: We move to strike the answer.

"The Court: It is after the witness has testified. I don't think it is competent testimony.

"Mr. Brobston: We ask the Court to charge the jury to disregard the answer.

"The Court: Where did the objection come in?

528

"(The reporter read the question, answer, and objection).

"Mr. Sullinger: Judge, this is the night of the killing.

"The Court: I understand. I don't think that would be competent testimony, the sale of liquor. If the parties were drinking it might be a different proposition.

"Mr. Ewing: This is purely and simply a—

"The Court: I don't see that it is material to the issue in this case on trial. I will sustain the objection.

"Mr. Sullinger: I want to show that the witness and defendant drank the liquor. I want to show that they did have some liquor.

"The Court: That is a round way. You can ask the direct question whether she was drinking or not. Sustain the objection to the last question, or rather, the motion to exclude, that he bought it from Josephine. That is excluded. The jury must not consider that testimony or let it have any influence with you.

"Q. Frank, you went down to Josephine's house about ten-thirty and you got some liquor there? A. Yes, sir.

"Q. How much did you get? A. Well, I first got a one dollar shot, and then turned around—

"Mr. Ewing: We move to exclude that, if your Honor please; about the one dollar shot.

"The Court: I don't think the quantity is material. Sustain the objection.

"Mr. Sullinger: You don't think the defendant's mental condition at the time of the killing that night is material?

"The Court: I am not going to argue with you, Mr. Sullinger, but I don't think the question brings that out. You asked him how much liquor he bought from her.

"Mr. Sullinger: No, I didn't.

"Q. How much liquor did you and Josephine have there, is what I am getting at?

"Mr. Ewing: We object. It calls for irrelevant, illegal incompetent and immaterial testimony. Sheds no light, and it is prejudicial.

"The Court: Sustain the objection. I think the testimony should be limited to the quantity of liquor, if any, that the defendant drank at that time.

"Q. All right, Frank, we will go back. You and Josephine have any liquor down there at the house?

"A. That is the way I bought it—

"Mr. Ewing: I object to that.

"Q. Did you have any liquor down there? A. Yes, sir.

"Mr. Ewing: This Negro got more sense than that. This witness was a witness in the case before; we have talked to him before; and he never testified a thing about that before, like that.

"The Court: Mr. Ewing, if you have any objection to make, please make it.

"Mr. Ewing: I am objecting to his continuing to volunteer this statement. He is smart enough to know better than that.

"The Court: I don't know. The witness is not apparently a college graduate of a high degree.

"Mr. Ewing: I ask that he be instructed to answer the question.

"The Court: Lets proceed.

"Q. Did you and Josephine have some liquor down there that night? A. Yes, sir.

"Q. Did you drink any of it? A. Yes, sir.

"Q. Did Josephine drink any of it? A. Yes, sir.

"Q. How much did you drink? A. Well, I drank a dollar shot.

"Q. How much did Josephine drink?

"Mr. Ewing: We move to exclude that.

"The Court: Overruled.

"Mr. Ewing: We except.

"A. Me and her drunk that whiskey together.

"Q. Can you say about how much you had about, if in a water glass, or bottle; how much liquor did you and Josephine drink between you? A. About a half pint."

Also during the cross examination of the appellant the record shows the following:

"Q. You do sell whiskey there don't you?

"Mr. Ewing: I object to that.

"A. Sir?

"Q. You do sell whiskey there don't you? A. No, sir."

The improper argument complained of was the following statement by the Solicitor to the jury in his closing argument, the record showing the following:

"What does he find? He finds Screwworm out there buying whiskey as usual.

"Mr. Ewing: I object to that.

"The Court: I don't think the evidence shows that he bought it as usual. I will exclude that. The jury will not consider it."

This court has en banc given careful consideration to this application for rehearing. We have concluded there is merit in appellant's contention.

Under all the evidence disclosed by this record whether there had been a sale of liquor by the appellant was irrelevant to the issues. This line of improper testimony was however injected into this case by the Solicitor during the cross examination of Cornelius. It is true that the trial judge sustained objections where the same were interposed. This same line of questioning, though without objection being interposed, was persisted in during the cross examination of the appellant. The appellant denied the sale of whiskey. The questions nevertheless carried their odium.

In the face of the court's action in sustaining the objection to the questions pertaining to the sale of whiskey by the appellant the Solicitor's reference in his closing argument to such sales cannot be regarded lightly. The court did sustain the appellant's objection to such line of argument, and instructed the jury rather perfunctorily to disregard same.

■ We of course cannot with certainty measure the substantive injury to appellant's cause by the above occurrences. We are certain however that the possibility of substantial injury is real. This being so justice demands that this case be submitted to another jury free of these extraneous influences. Birmingham Baptist Hospital, Inc., v. Blackwell, 221 Ala. 225, 128 So. 389; American Ry. Express Co. v. Reid, 216 Ala. 479, 113 So. 507; Blue v. State, 246 Ala. 73, 19 So.2d 11; Moore v. State, 30 Ala.App. 552, 9 So.2d 146.

We therefore conclude that the lower court erred in denying appellant's motion for a new trial. This application for a rehearing should therefore be granted and this cause reversed. It is so ordered.

Application for rehearing granted. Cause reversed and remanded.

### After Remandment.

In the opinion of the Supreme Court reversing and remanding this case to us for further consideration it is stated: "The Court of Appeals reversed on rehearing because of the 'possibility of substantial injury.' Unless the occurrence on which the motion was based, which did not involve a ruling adverse to appellant, *probably* injuriously affected the substantial rights of appellant, there was no reversible error in overruling the motion."

The full context of what we wrote is set out earlier in the opinion of the Supreme Court, and it is to be noted that the full context shows that what we said was that "the *possibility of substantial injury is real.*" (Italics ours).

The writer is of course fully aware that in determination of property interests exact phraseology and deft choice of words is of utmost importance. In conveyances and instruments dealing with rights of property certain words, with the gloss of judicial interpretation surrounding them, have acquired rigid meanings. Certainty of title is essential to property value, and necessitates rigid word connotation in this field of jurisprudence.

The writer has however never considered exact or set terminology a necessary ingredient of decisions dealing with criminal cases, in which conclusions must rest in many instances on the particular facts of each individual case, so long as the words used reflected the spirit of the law. "For the letter killeth, but the spirit giveth life." 2 Corinthians 3:6. Absolute justice to the individual, rather than rigidity of word meanings growing out of pat expressions

congealed in legal terminology, is the desired end in such cases.

The writer is, and was, familiar with the terminology of Supreme Court Rule 45, Code 1940, Tit. 7 Appendix, and that its exact terminology was that we should not base a reversal on error unless, after an examination of the entire cause it should appear that the error complained of has probably injuriously affected the substantial rights of the parties.

Different shadings of meaning are of course attached to words by different individuals. In our opinion we stated "We are certain however that the possibility of substantial injury is real." To the writer the meaning connoted by such words is that the error with which we consider this record infected probably injuriously affected the substantial rights of this appellant.

Upon further consideration of this cause, and after giving effect to the principles enunciated in Blue v. State, 246 Ala. 73, 19 So.2d 11; Kraas v. American Bakeries Co., 231 Ala. 278, 164 So. 565; Templeton & Son v. David, 233 Ala. 616, 173 So. 231; Louisville & Nashville R. Co. v. Sullivan Timber Co., 126 Ala. 95, 27 So. 760, and Clendenon v. Yarbrough, 233 Ala. 269, 171 So. 277, it is our opinion that the error pointed out in our former opinion in this cause probably injuriously affected the substantial rights of this appellant and that this cause is due to be reversed and remanded. It is so ordered.

Reversed and remanded.

BRICKEN, Presiding Judge, not sitting.