269 So.2d 171

**Donald Wayne CROW**

**v.**

**STATE.**

**7 Div. 141.**

Court of Criminal Appeals of Alabama.

Nov. 14, 1972.

———◆———

William E. Hereford, Jr., Talladega, for appellant.

**156**

William J. Baxley, Atty. Gen., and Herbert H. Henry, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted in the Circuit Court of Talladega County of carnal knowledge of a girl over the age of twelve (12) and under the age of sixteen (16) years and his punishment fixed at imprisonment in the penitentiary for a term of ten years.

The fact of sexual intercourse is not in dispute. Indeed, appellant admitted he had sexual intercourse with the prosecutrix, but, according to his testimony, about a month before the occurrence she told him she was seventeen years of age. He further testified that she offered no resistance and did not do anything to indicate she was not consenting. The testimony of prosecutrix and that of her mother showed her to be fourteen (14) years of age at the time the crime was committed. Appellant was twenty-one years of age on the occasion.

On July 11, 1970, the prosecutrix, who lived with her grandparents in Sycamore, Talladega County, Alabama, was visiting a married sister in Anniston, Alabama. She went to a park near the apartment building where her sister resided in the late afternoon of that date where she met appellant and two other boys, Tommy Isbell and Raymond Gann, all three of whom she had known casually for about two years. There was another girl present. Prosecutrix, appellant, Isbell, Gann, and the other girl got in an automobile to look for the other girl's boyfriend. They were not able to find him and carried the girl home. The trio told prosecutrix they were going to try and locate some other girls and invited her to go along. They stopped and purchased two (2) six-packs of beer and proceeded toward Oxford but did not stop at any of the houses along the way. Prosecutrix asked them if they were going to look for some other girls and appellant replied that they were not. She asked them where they were going, and they said they were going to Salt Creek Falls and were then headed toward Talladega County. After they got in Talladega County, they drove about five miles and stopped the car near Salt Creek Falls. Appellant and Gann got out of the car and walked behind the car and sat down. Isbell began kissing prosecutrix and kept asking her to get in the backseat. She refused and asked to be carried home. Isbell told her if he were to let her go, the others would kill him. Isbell got out of the car and went to the others, and shortly thereafter, appellant came to the car and tried to force himself on prosecutrix. She got out of the car and started to run when appellant caught her by the arm and hair and threatened her. He told her to unzip her shorts, and when she refused, he took her shorts and underclothes off one leg and proceeded to have sexual relations with her on the front seat of the automobile. Prosecutrix testified when the act was completed, appellant told her she was no longer a virgin and left the car. Isbell came and over prosecutrix's protest had sexual relations with her. Gann then followed Isbell. The parties then returned to the park in Anniston, where the trip began. Appellant told prosecutrix not to tell anyone and that she would be alright. Prosecutrix got to her sister's house around five a. m. on Sunday morning. She went to bed but could not sleep, got up and dressed and walked to the park. There she met a friend and complained to him about what had happened to her. He advised her to tell her sister. She told her sister all the details about noon that day and her sister carried her to

the police station in Anniston, and upon telling the officers that the occurrences took place near Salt Creek Falls, they were told that it happened in Talladega County. They left immediately for Talladega. Upon arriving in Talladega, the sister called the District Attorney's home. He was not in but his wife advised taking prosecutrix to a doctor. They saw a physician, Dr. S. D. Davis, who sent prosecutrix to the Citizens Hospital, where she was examined by Dr. Davis.

Dr. Davis testified that he conducted a pelvic examination using a vaginal spectrum. He took the vaginal content and checked it microscopically and found live spermatozoa and male cells present and stated that definitely someone had engaged in intercourse with her. As above stated appellant admitted having sexual relations with the prosecutrix.

On Monday, July 13, 1970, the mother of prosecutrix appeared before Hon. W. E. Hollingsworth, Jr., District Attorney for the Twenty-Ninth Judicial Circuit of Alabama, and made an affidavit and a writ of arrest was issued and this prosecution was begun.

Appellant raises three points on this appeal, viz: (1) venue, (2) self-corroborating testimony, and (3) infirm arrest warrant issued by the district attorney. We will treat these matters in the order presented.

During the direct examination of prosecutrix, she testified that they were in Talladega County when appellant and the other boys had sexual intercourse with her. On cross-examination she said she was not familiar with the county lines and she could not be positive that the acts were committed in Talladega County.

The district attorney suggested to the court that prosecutrix be permitted to accompany the deputy district attorney and a deputy sheriff to the place where the acts were allegedly committed and the court granted the request. After the trip, prosecutrix was recalled as a witness and again testified that the occurrences took place in Talladega County. She further testified that she found the exact spot where the intercourse took place and pointed out certain identifying objects to the deputy sheriff, being a gate, a bridge, and a church near the scene. She again testified that it happened in Talladega County. The district attorney then asked prosecutrix if her testimony was based on taking the trip with the deputy sheriff and the deputy district attorney, and she answered, "Yes, sir."

The deputy sheriff was then called as a witness for the state. He testified that he was familiar with the county lines of Talladega County and particularly with the area that the prosecutrix pointed out to him as he "had sawmilled all over those woods." He confirmed the identifying objects or landmarks pointed out to him by prosecutrix were all located in Talladega County. And further that the closest county to this area was Calhoun County and that the Calhoun County line was a good five miles from the spot pointed out to him by prosecutrix.

In Moore v. State, 30 Ala.App. 552, 9 So.2d 146, the then Court of Appeals said:

"The first insistence of error is that venue was established by hearsay evidence. The prosecutrix testified that, after the alleged attack, she and defendant used a towel (given her by defendant) and that she threw it out of the car before they left the scene for the return trip home.

"Several days later, she and Detective Howell found the towel at this place which, according to Howell, was about half way between Mohler's Hot House and Hollis' Dairy. Witness McAdory then testified that these two points and the intervening territory between them (and where he found the towel) were all within the jurisdiction of the Circuit Court of Jefferson County, Alabama,

*Bessemer Division.* This competently showed the proper venue as in the Bessemer cut-off.

"Venue, as any other fact, may be established by either direct or circumstantial evidence, and the proof is sufficient if, from the facts and circumstances adduced, it can be reasonably inferred. Goodwin v. State, 27 Ala.App. 493, 175 So. 415; Smith v. State, 21 Ala.App. 497, 109 So. 530; McGrew v. State, 21 Ala.App. 266, 107 So. 328; Palmer v. State, 168 Ala. 124, 53 So. 283; Tinney v. State, 111 Ala. 74, 20 So. 597.

"The proof of venue was not rendered hearsay because the prosecutrix said she threw out the towel at the scene. The towel merely identified the place of the alleged crime, which was proved to be between the two aforementioned points and in the Bessemer Division. Her testimony as to the towel was but a link in the chain of proof which, added to that of the other two witnesses, established the venue. 23 C.J.S., Criminal Law, § 914, p. 169; Hurston v. State, 235 Ala. 213, 178 So. 223."

See also Blackmon v. State, 46 Ala.App. 274, 240 So.2d 696.

■ We hold that the venue was sufficiently established in this case.

■ The general rule is that a witness cannot corroborate himself or fortify his testimony by proving his acts. Pope v. State, 168 Ala. 33, 53 So. 292.

In Green v. State, 96 Ala. 29, 11 So. 478, 479, the Court said:

"A witness cannot corroborate himself by introducing other witnesses to prove that he made the same statement to them to which he deposed, or that he showed other witnesses a spot in regard to which he had testified."

■ The corroborating testimony of prosecutrix in this case by the testimony of the deputy sheriff, who went with her to the alleged scene of the crime, was received in evidence without objection. Review on appeal is limited to matters on which rulings are invoked at nisi prius. Felton v. State, 47 Ala.App. 182, 252 So.2d 108.

We turn now to appellant's third contention.

■ In Rennow v. State, 47 Ala.App. 419, 255 So.2d 602, this Court held unconstitutional Act No. 130, approved June 26, 1951 (Title 13, Section 229(3), Code of Alabama 1940) authorizing arrest warrants to be issued by district attorneys. The holding had its genesis from Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, (and cases there cited), which dealt primarily with a "search warrant" issued by the Attorney General (who became the chief prosecutor at the trial) and not by a "neutral and detached magistrate" to satisfy the requirements of the Fourth Amendment as made applicable to the States by the Fourteenth. No search warrant was issued or involved in the instant case.

In *Rennow,* supra, this Court said:

"Though the writ of arrest was wrongly issued it does not follow that the arrest was invalid."

In Jackson v. State, 45 Ala.App. 621, 235 So.2d 382, this Court, in dealing with the same statute, said:

"Moreover, an indictment in regular form may not be quashed because the warrant under which the indicted person was arrested was defective. Wilson v. State, 99 Ala. 194, 13 So. 427; Toney v. State, 15 Ala.App. 14, 72 So. 508; Trammell v. State, 43 Ala.App. 308, 189 So.2d 760."

*Jackson* is still sound law and disposes of appellant's third contention.

Mindful of our duties in all criminal cases, we have searched the record for errors

affecting the substantial rights of appellant. We have found none. The case is due to be affirmed and it is so ordered.

Affirmed.

All the Judges concur.